270 So.2d 514

STATE of Louisiana

v.

Roy CHAMBERS.

No. 52002.

Dec. 11, 1972.

 

Joseph Neves Marcal, III, New Orleans, for defendant-appellant.

William J. Guste, Jr., Atty. Gen., Harry H. Howard, Asst. Atty. Gen., Jim Garrison, Dist. Atty., Louise Korns, Asst. Dist. Atty., for plaintiff-appellee.

McCALEB, Chief Justice.

The defendant, Roy Chambers, was charged, tried, and convicted of armed robbery, in violation of R.S. 14:64. Following imposition of sentence, he prosecuted this

appeal, relying on twenty-two bills of exceptions for a reversal of his conviction.

A rather detailed statement of the facts and sequence of events as reflected by the record is necessary for a proper disposition of these bills. They reveal that around 8:00 A.M. on July 10, 1968, a 1958 maroon Pontiac, with license plate bent so as to obscure its numbers, parked in front of Brewer's Food Store at 540 South Scott Street in the City of New Orleans. Arthur Ebeyer, waiting in a nearby truck while his helper delivered soft drinks to the food store, went into Brewer's and alerted John Parker, the sixteen-year-old clerk, telling him that his suspicion had become aroused as to the mission of the occupants of the parked car, particularly because of the bent license plate. Parker informed him he was not alarmed as the men were known to him as customers of the store, having been in the store only the day before.

Shortly thereafter the two men entered the store, purchased a soft drink and some doughnuts, and stayed in the store until all of the customers had left; whereupon one of them, later identified as Arthur Raymond Santa Cruze (or Cruz, as the name appears in a varied spelling), left the store and took up a "lookout" position just outside. The other man, Roy Chambers, pointing a gun at Parker, demanded money, and took with him $80 in a paper bag as he left the store. He and Cruze then drove away in the car. The police were called and a description of the car and the men was given them by Parker, later substantiated by Ebeyer.

Three days thereafter, about 1:25 A.M., July 13, 1968, two officers, noting a car fitting this description (including the bent license plate) on Canal near South Roman, pulled it over to the side and had the occupants alight. The driver, Chambers, was immediately placed under arrest when he was unable to produce his operator's license. When it was further noted that not only the car but the occupants fitted the description of the men involved in the July 10th robbery of Brewer's Food Store, they were both placed under arrest for the robbery and were advised of their rights.

Three days later, on July 16, 1968, and without having been shown any pictures, mug shots, or having been permitted to glimpse the arrested men, Parker picked them out of a lineup which included seven men, all of somewhat similar height, weight, and coloring.

On July 29, 1968, Chambers and Cruze were jointly charged by information with the armed robbery, and, on August 23rd following, they were arraigned and pleaded not guilty. The court appointed the Legal Aid Bureau to represent them and the trial was set for September 25, 1968, being continued on that day at the request of defense counsel. On October 14, 1968, there was a joint motion for continuance as to

Cruze, the court being informed that Chambers had escaped, and, on November 26, 1968, Cruze, represented by counsel, withdrew his former plea of not guilty and entered a plea of guilty, being duly sentenced.

It was not until November 19, 1970, that the court was requested to subpoena two witnesses preparatory to the trial of Chambers and, on November 24th, the case was continued because the witnesses were not present. On December 14, 1970, defense counsel withdrew because of a conflict of interest and the court appointed Joseph Neves Marcal, III, the present attorney, to represent Chambers. The trial was conducted January 27, 1971, and resulted in a verdict of guilty.

■ Bill of Exceptions No. 1 was reserved when, during voir dire examination, the court refused defense counsel's request that the state be restricted in the trial to representation by only one attorney. After the trial and opening argument by one assistant district attorney, defense counsel renewed this request when it became apparent the rebuttal would be undertaken by the other assistant. Bill No. 17 was reserved when this request was again denied.

There is no merit in these bills. There is no law restricting and/or regulating the number of attorneys representing either the state or the defense in criminal matters. The position of defense counsel is

that it was a matter of "unfair tactics" since being "double-teamed" by the state's attorneys placed him at a disadvantage. Had he felt this way, the judge, upon request, may have appointed other counsel to assist him, or defense counsel could have called on the Legal Aid Bureau for additional assistance. In appointing Mr. Marcal to represent the defendant, the trial judge stated he was doing so because the judge knew him to be highly competent, and Chambers had been having difficulties with other counsel who had endeavored to assist him. From our view of the record the judge's confidence was not misplaced, for Mr. Marcal handled himself well, vigorously arguing every possible error on his client's behalf. He has also ably presented these in brief form to this Court.

■ Bill of Exceptions No. 2 was also reserved during voir dire examination of the veniremen and is likewise without merit. Defense counsel sought on this examination to determine whether the prospective juror could accept the proposition that the defendant, at that point, was innocent. The state objected, arguing the defendant was not, in fact, innocent, but was presumed to be innocent as a matter of law. The bill was reserved when the judge maintained this objection and refused to grant defense motion for a mistrial.

As pointed out by the trial judge in his per curiam to this bill, "Article 770, Louisi-

ana Code of Criminal Procedure, required the Court to order a mistrial, on defendant's motion, when the District Attorney remarks or comments: (1) prejudicially and irrelevantly on defendant's race, religion, color or national origin; (2) on another crime committed by defendant as to which evidence is not admissible; (3) defendant's failure to testify in his own defense; (4) refusal of judge to direct a verdict. The remark complained of by defendant does not fall within any of these four categories, and thus mistrial was not mandatory."

■ Defense counsel treats Bills of Exceptions Nos. 3, 4, 5, 6, 7, 9, 10, 11, 21 and 22 as a group. All stem directly or indirectly from the trial judge's refusal to hold a separate hearing out of the presence of the jury to determine the merits of a defense Motion to Suppress the Arrest of Defendant and Subsequent Identification, which motion was filed for the first time on the day of the trial after the jurors were sworn and the witnesses sequestered, contrary to the provisions of Article 703 of the Code of Criminal Procedure, requiring that such a motion be filed "no later than three judicial days before the trial on the merits begins, unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion."

Although counsel did not file a motion to suppress evidence in the lower court, he objected to the introduction of the evidence during the trial, and in this Court he argues the motion as one to suppress evidence and identification.

Bill No. 3 was reserved when the state referred to the lineup identification of Chambers during opening argument.

Bills Nos. 4 and 10 were levelled at rulings permitting John Parker, the victim, to testify—No. 4 on original about the robbery and No. 10 when he was recalled and was testifying about the lineup.

Bill No. 5 was reserved when Parker identified Chambers in the courtroom as one of the two men who entered the store at the time of the robbery, allegedly because it had not been first established on what basis this identification was being made.

Bill No. 6 was reserved when the judge ruled inadmissible as speculative counsel's effort on cross-examination to determine the effect of the lineup two years previously on Parker's ability to identify Chambers in the courtroom.

Bill No. 7 was reserved when one of the arresting officers was permitted to testify about the circumstances surrounding the arrest of Chambers in the Pontiac car three days after the robbery.

Bill No. 9 was reserved when, after exhaustive cross-examination as to the make-up of the lineup the judge curtailed further examination of the officer who had only presided over the lineup.

Bill No. 11 was reserved when Parker was testifying about his identification of Chambers in the lineup, defense counsel terming such examination "repetitious", although Parker's previous testimony pertained only to his identification of Chambers in the courtroom.

Bill No. 21 was urged after verdict, and is levelled at the verdict, insofar as it might reflect the jury's reaction to testimony about the arrest and identification which, counsel contends, should have been given out of the jury's presence.

Bill No. 22 was reserved when a new trial was denied, which request was based, in part, on these bills.

The basis for the arrest portion of this motion is that Chambers was arrested without probable cause: for the suppression of his identification in a subsequent lineup, that he was not represented by counsel; further, that the lineup infringed his constitutional rights as enunciated in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149. The objection to the evidence is that it was the illegal fruit of a warrantless search and seizure.

■ There is no substance to any of these bills. From the facts of the case as developed during the trial and given in detail above, it is evident there was sufficient cause to arrest Chambers and Cruze. Their description and the description of the car in which they were riding, particularly the bent license plate, were broadcast immediately following the robbery and when a car fitting this description, occupied by two males fitting the description of those committing the robbery, was spotted by two officers on patrol, they were stopped and arrested for the crime.

■■ It is true Chambers was not represented by counsel at the lineup, but only because, although fully advised of all of his rights, and without pressure or coercion of any kind, he at that time in writing waived his right to counsel. Additionally, the holding in the Wade case is not controlling here from the factual standpoint. This lineup was conducted six days after the crime, before any charges were brought. The composition of the persons in the lineup conformed with routine practice. The men were of a similar height, weight and coloring as Chambers and Cruze. John Parker, the victim, picked them out of the lineup at once without having been shown any mug shots, photographs, or being given a glimpse of the men. His identification was based solely on his recognition of them as the men who perpetrated the crime, and who were known to him independently as customers of the store that was robbed.

■ In his argument counsel does not pinpoint the exhibit or exhibits objected to as being the fruit of a warrantless search

and seizure, but apparently he referred to the bent license plate, as this is the only evidence taken from the car at the time of the arrest that was introduced in evidence. This license plate was not secured through a warrantless search, but, instead, was only a seizure under the "plain view" doctrine. Consequently, the law with respect to probable cause to arrest in connection with alleged searches and seizures is not applicable. See the recent decision in State v. Jackson, No. 52,600 on the docket of this Court, handed down November 6, 1972. 263 La. 849, 269 So.2d 465.

Defense counsel does not contend he was entitled to file the Motion to suppress late under the exceptions contained in Article 703 of the Code of Criminal Procedure, i. e., there was no opportunity to do so sooner, or he was unaware sooner of the grounds for the motion. Instead, he argues initially that when he was appointed to represent the defendant over a month prior to trial, and some two years after the robbery, the judge informed him he could file motions, "specifically referring to motions to suppress," on the day of the trial. His further argument is that even though late, once he was permitted to file the motion, the judge had no recourse but to pass on its merits out of the jury's presence, with the result he was restricted in his cross-examination of the state witnesses in his effort to establish the illegality of the arrest, identification, and evidence.

Initially, it is important to note that although counsel vigorously asserted his position in this respect throughout the trial, at no time did he mention to the judge any concession about the filing of a Motion to Suppress on the day of the trial, and from the judge's per curiams, it is evident he made no such concession.

■ Counsel cites no law to sustain his position that once the judge permitted him to file the motion, he had no recourse but to hear and rule on it in a separate proceeding. When such a motion is filed late, any objection available to the defendant with respect to a claim of unlawfulness is waived. State v. Wallace, 254 La. 477, 224 So.2d 461.

■ Furthermore, we fail to see how the defendant was prejudiced by the judge's ruling, or that an unfair advantage was taken of counsel. Instead of refusing to permit counsel to file the late motion, the judge, in the exercise of his discretion under Article 703, referred it to the merits in order that counsel might develop his contentions thereunder during the trial, if possible. Despite vigorous efforts to do so, counsel was unsuccessful, for the reasons above given in disposing of the merits of the motion.

■ With respect to the fact that Chambers was not represented by counsel at the lineup, the state offered in evidence

a Xerox copy of the waiver he signed prior thereto; whereupon defense counsel objected to it as not being the best evidence, and reserved Bill of Exceptions No. 8 when his objection was overruled.

This bill is insubstantial. When Chambers was on the stand testifying, defense counsel did not seek to determine whether, in fact, he had signed the document. He did not even question him about it. In his per curiam, the judge declares:

"Here the original could not be produced, and the witness identified the thoroughly legible copy marked S-4 as a true, correct and thoroughly accurate copy of the original Waiver Form executed by defendant in his presence. Thus the requirements of the law were met. State v. Martin (1919) 145 La. 35, 81 So. 747; State v. Palmer (1955), 227 La. 691, 80 So.2d 374."

Bills Nos. 12, 13, 14, and 15 were reserved in connection with various rulings of the court admitting five exhibits tendered by the state. In addition to the waiver, which forms the basis of Bill No. 8 just disposed of, these consist of two photographs of the car (S-1 and S-2), a photograph of the lineup (S-5), and the bent license plate (S-3).

The basis for the defense objection is that the defendant had a right to demand that a predicate be laid prior to the admission of evidence to be used against him to establish their authenticity, and, further, that this evidence must have been "sufficiently and accurately connected with the commission of the crime."

We find no merit in these bills. Such items, termed demonstrative evidence, are "authenticated by testimony of a witness who testified to facts showing that the object has some connection with the case which makes it relevant." McCormick on Evidence, 1st Edition, 384, Section 179. "* * * the theory justifying admission of these exhibits requires only that the items be sufficiently explanatory or illustrative of relevant testimony in the case to be of potential help to the trier of fact." McCormick on Evidence, 2nd Edition, 528, Section 212. Consequently, as to the photographs, "the person who lays the foundation need not be the photographer nor need he know anything of the time, conditions, or mechanisms of the taking. Instead he need only know about the facts represented or the scene or objects photographed, and once this knowledge is shown he can say whether the photograph correctly and accurately portrays these facts." McCormick on Evidence, 2nd Edition, 531, Section 214. Our law is in accord. R.S. 15:441. See, also, State v. Palmer (1955), 227 La. 691, 80 So.2d 374, and the authorities therein cited.

In his excellent per curiam to these bills, the trial judge carefully delineates the manner in which the items were authenti-

cated by the witnesses and their connexity to the commission of the crime. For example, the car as shown in the photographs was identified by Arthur Ebeyer, who first saw it outside the robbed store and alerted the clerk, later giving the police a description of the car, the bent license plate, and the men who occupied it. The arresting officer identified the car as the one he had stopped and Chambers as the driver. Both witnesses supported the accuracy of the depiction of the vehicle in the photographs. Ebeyer's testimony related the car to the crime, and the officer's testimony related the vehicle to the defendant. The officer identified the plate not only by the bent portion, but also by virtue of the numerical designation of the plate, while Ebeyer identified the plate as one seen by him on the car in a bent condition, which prevented him from ascertaining the numbers. The plate was relevant to the issue of identification in that it corroborated Parker's identification of the defendant as the robber and connected him with the car Ebeyer saw at the scene. It was thus relevant and admissible.

◼◼◼◼ The photograph of the lineup was identified by Parker and the officer who handled this phase of the case, as accurately portraying the lineup they witnessed and conducted. It was clearly admissible.

◼◼◼◼ Bill of Exceptions No. 16 was reserved when Cruze, the other man accused with Chambers of the crime, was testifying on cross-examination, and covers a wide range of this questioning. In addition to objecting to the tone of voice used, defense counsel contends the state's attorney was "badgering" the witness and endeavoring to intimidate him. In particular, Cruze, on direct examination, had testified he was one of the men involved in the robbery, but denied Chambers was the other, stating his accomplice had been a man known to him only as "Sugar." When the state's attorney, on cross-examination, asked Cruze what would happen when he returned to the penitentiary if he implicated Chambers, defense counsel objected on the ground it called for speculation, and, further, was irrelevant to the guilt or innocence of Chambers.

The trial judge states in his per curiam that the conduct of the assistant district attorney did not offend the order and dignity of the court, although, he may have raised his voice "for emphasis and dramatic effect;" that the testimony was not irrelevant and he permitted it because the state had a right on cross-examination to develop any bias, interest, or corruption under R.S. 15:492. He denied this line of questioning on cross called for a speculative answer, since the answer called for facts within the peculiar knowledge of the witness as to what "unpleasant consequences would befall him upon his return to Angola unless he testified to aid defendant."

We find no error in this ruling.

Bill of Exceptions No. 17 raises the same issue raised in the first bill and has been passed on there.

▬ The next two bills (Nos. 18 and 19) were reserved during the state's rebuttal argument. In an effort to prove Chambers had not been the accomplice of Cruze, defense counsel elicited from Chambers testimony to the effect he had been with three people during this time: first, with his brother Ronald; from there they had gone to the home of a cousin, Willie Spears, and from there Chambers stated he had gone to meet his girl friend. Defendant and his brother alone testified to this effect.[1]

In his per curiam the trial judge advises that during closing argument defense counsel "commented upon the necessity of a party having to take his witnesses as he finds them, and the inability of a party or his counsel to select prominent citizens such as the Mayor," being limited to those who had actual knowledge of facts relevant to the case.

On rebuttal the assistant district attorney adverted to this argument, stating under the circumstances he did not feel Mayor Landrieu would have made a good witness, asking, " * * * what about his cousin,

Willie Spears? And what about his girl friend?" The basis for these objections is that such remarks exceeded the permissible scope of rebuttal argument, as defense counsel had not alluded to the testimony or lack of testimony by Willie or Cynthia Spears in his argument.

We agree with the trial judge that defense counsel "opened the door" to this argument by stating during his closing argument he was limited to calling only those witnesses who had knowledge of the relevant facts. According to the testimony of Chambers, three people had knowledge of his "alibi" during this crucial time, his girl friend, Ronald Chambers, and Willie Spears. Of these three, only Ronald testified but, significantly, as the judge points out, at no time following the arrest did Ronald come forward to furnish the "alibi" until asked to do so at the trial.

The trial judge correctly ruled therefore, that the state was within permissible bounds on rebuttal to call the jury's attention to the lack of testimony from either Willie Spears or defendant's anonymous girl friend on this point. See, State v. Poe (1948), 214 La. 606, 38 So.2d 359; State v. Green (1944), 205 La. 439, 17 So.2d 620; and State v. Taylor (1929), 167 La. 1113, 120 So. 875.

---

1. Both Willie Spears and his wife, Cynthia, were subpoenaed, but were excused by defense counsel early in the trial, and were never called to the stand.

■ The twentieth bill was reserved during rebuttal argument when the state's attorney called attention to the rust marks on the license plate, stating these showed it "was in fact bent." The defense counsel objected to this on the ground he was bringing in matters not introduced or in evidence.

This bill is frivolous. Not only was the plate introduced in evidence, but, during his closing argument, defense counsel, as the judge puts it in his per curiam, "addressed himself to the subject of S–3 and the factual issue of whether or not S–3 had been bent so as to obscure the numbers."

Bills Nos. 21 and 22 were reserved following the verdict. The first is levelled at the verdict insofar as it reflected a denial by the court of defendant's Motion to Suppress Identification, and has been disposed of above, as has a portion of the second bill. The remainder of Bill No. 22, reserved when a new trial was denied, is based on the general assertion that the court's ruling on the motion to suppress and the numerous other instances forming the basis of the above bills were prejudicial to defendant's cause, and, thus, present nothing further for our consideration.

For the reasons assigned, the conviction and sentence are affirmed.

BARHAM, J, concurs in the result only.