296 So.2d 824 (1974)
STATE of Louisiana
v.
Nathaniel LEWIS.
No. 54243.
Supreme Court of Louisiana.
June 10, 1974.
*825 Charles J. LeBlanc, Thibodaux, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Francis Dugas, Dist. Atty., Walter Naquin, Jr., Asst. Dist. Atty., for plaintiff-appellee.
SANDERS, Chief Justice.
The defendant, Nathaniel Lewis, was tried under a Bill of Information charging him with armed robbery, a violation of LSA-R.S. 14:64. The jury returned a verdict of guilty, and the trial judge sentenced the defendant to a term of 18 years in the custody of the Louisiana Department of Corrections without benefit of parole, probation, or suspension of sentence. The defendant has appealed, relying upon three perfected bills of exceptions for the reversal of his conviction. These bills relate to the overruling of a motion to suppress identification testimony and to the refusal of the trial judge to either charge the jury on the penalty for armed robbery or to allow defense counsel to read and argue the penalty provision of the armed robbery statute to the jury.
On the evening of April 18, 1973, Mrs. Nettie Boudreaux was working in her son's grocery store located near Thibodeaux, Louisiana. Allegedly, Lewis and a companion entered the store. They selected several food items and placed them on the counter. Mrs. Boudreaux rang up the items on the cash register. Defendant Lewis then drew his pistol and took the money from the cash register. After asking Mrs. Boudreaux where the "rest of the money" was, he beat her with the pistol until she fell to the floor. The two felons then fled the scene.
Several weeks later, on May 7, Mrs. Boudreaux appeared at a police lineup, where she identified the defendant. She also identified him in her courtroom testimony.

BILL OF EXCEPTIONS NO. 4:

Suppression of the Identification Testimony.
The defendant reserved Bill of Exceptions No. 4 to the overruling by the trial judge of a motion to suppress the lineup identification and the in-court identification.
The lineup consisted of six black men in prison garb, including the defendant. Defense counsel was present. Mrs. Boudreaux was seated facing the men in the lineup, looking through a one-way glass partition. As Mrs. Boudreaux faced the lineup, the defendant's position was fourth from her right. From the perspective of the lineup participants, defendant was third from their right.
After viewing them, the witness identified her assailant as the "third from the right." Captain Bergeron, a police officer present at the lineup, then inquired if she knew her left from her right. She then indicated that she meant the defendant.
Defendant contends that the conversation between the police officer and the victim was improper and so impermissibly suggestive that it also made the in-court identification inadmissible. He relies upon United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). This argument lacks merit. Although there was a flaw in the initial communication at the lineup, the witness unquestionably identified the defendant as the one who *826 committed the crime. The police officer's inquiry did no more than seek clarification of her statement.
Assuming arguendo, however, that the lineup identification was faulty, the incourt identification was properly admitted.
It is well established that a tainted pre-trial lineup does not bar an in-court identification if the in-court identification has a basis independent of the lineup. United States v. Wade, supra; State v. Chambers, 263 La. 1080, 270 So.2d 514 (1972); State v. Hall, 261 La. 777, 260 So.2d 913 (1972); State v. Jones, 261 La. 422, 259 So.2d 899 (1972); State v. Singleton, 253 La. 18, 215 So.2d 838 (1968); State v. Allen, 251 La. 237, 203 So.2d 705 (1967).
In the present case, the State did not rely upon the pretrial lineup and offered no evidence of it. Defense counsel raised the subject during cross-examination.
The victim testified that she had seen the defendant on prior occasions. At the time of the crime, she saw him faceto-face, in plain light, for about ten minutes. The record discloses that the identification was based upon her observation at the time of the crime.[1]
We conclude that in-court identification was properly admitted.

BILLS OF EXCEPTIONS NOS. 12 AND 14:

The Penalty Provision of the Armed Robbery Statute.
The defendant reserved Bill of Exceptions No. 12 when, after the District Attorney objected, the Court refused to give the following instruction to the jury:
"Whoever commits the crime of Armed Robbery shall be imprisoned at hard labor for not less than five years and for not more than 99 years without benefit of parole, probation or suspension of sentence."
The defendant reserved Bill of Exceptions No. 14 to the refusal of the trial judge to permit defense counsel to read the penalty provision for armed robbery to the jury and "to argue same before the jury."
The record makes clear that the defense strategy was to advise the jury of the sentencing provision: minimum sentence, maximum sentence, and the statutory ban on parole, probation, and suspension of sentence. Defense counsel would then argue the severity of the sentence for armed robbery, with the view of securing an alternate verdict, that is, guilty of simple robbery or not guilty. See LSA-C.Cr.P. Art. 814.
We have often held that sentence regulations in noncapital cases such as those relating to minimum terms, probation, or parole, are inappropriate subjects for the judge's charge to the jury. By the same token, sentence regulations form no part of the applicable law to be argued by counsel before the jury. State v. Harris, 258 La. 720, 247 So.2d 847 (1971) argument by defense counsel; State v. Andrus, 250 La. 765, 199 So.2d 867 (1967) instruction to the jury; State v. Green, 244 La. 80, 150 So.2d 571 (1963) instruction to the jury; State v. Morris, 222 La. 480, 62 So.2d 649 (1952) instruction to the jury. See also State v. Banks, 258 La. 332, 246 So.2d 191 (1971) at f. n. 1.
*827 In State v. Green, supra, a narcotics prosecution, the defendant requested a special jury instruction as to the authorized sentence and that a person convicted under the statute was without the benefit of parole, probation, or suspension of sentence. The trial judge denied the special instruction. This Court affirmed, holding:
"Under the law of this state the judge is required to charge the jury all the law applicable to the accused's guilt or innocence of the crime charged, or any lesser crime included therein, in the light of the evidence adduced. It is the duty of the jury in such cases to determine the guilt or innocence of the accused, but in the event of conviction it is the duty of the judge, and not the jury, to impose sentence. The fixing of the punishment for conviction is solely within the province of the judge, and is no concern of the jury except in capital cases where the jury may return a verdict of `guilty without capital punishment' and preclude the judge from imposing the death sentence. Therefore this requested special charge was not pertinent, and was correctly refused."
In State v. Harris, supra, an armed robbery case, the trial judge ruled that defense counsel could not argue to the jury the severity of the sentence, that is, the minimum and maximum sentences and the unavailability of probation, parole, or suspension of sentence. In affirming the ruling, this Court stated:
"The determination of the appropriate penalty and the imposition of sentence in non-capital cases are functions of the judge. The jury is concerned only with guilt.
"Under Article 802 of the Louisiana Code of Criminal Procedure, the judge is required to charge the jury as to the law applicable to the case. Under Article 774, argument to the jury is restricted to the evidence admitted, to the lack of evidence, to conclusions of fact, and to the law applicable to the case.
. . . . . .
"We have held that sentence regulations in non-capital cases, such as those relating to mandatory terms, probation, or parole, are inappropriate subjects for the judge's charge to the jury. These matters are foreign to the jury's function of guilt determination and, consequently, form no part of `the law applicable to the case.'
"By the same token, sentence regulations form no part of the applicable law to be argued by counsel before the jury. To allow argument of these matters would inject irrelevant considerations into the jury's deliberations as to guilt."[2]
The prevailing rule elsewhere is in accord with the above holdings. See State v. Evans, 85 N.M. 47, 508 P.2d 1344 (1973); State v. Rhodes, 275 N.C. 584, 169 S.E.2d 846 (1969); People v. Cole, 382 Mich. 695, 172 N.W.2d 354 (1969); Williams v. State, 191 Tenn. 456, 234 S.W.2d 993 (1950); Hiller v. State, 116 Neb. 582, 218 N.W. 386, 58 ALR 1322 (1928); Annot. 67 A. L.R.2d 245, 294; 53 Am.Jur., Trial, § 807, p. 596; 23A C.J.S. Criminal Law § 1290, p. 708.
The rule is correctly stated in 53 Am. Jur.Trial § 807, p. 596 as follows:
"In criminal cases where the assessment of the punishment is by the court and not the jury, any instruction as to the punishment is unnecessary and should not be given, because it can be of no aid to the jury in determining the issue of guilt."
*828 The rule is especially applicable in Louisiana, because Article 19, Section 9 of the Louisiana Constitution (1921) and Article 802 of the Louisiana Code of Criminal Procedure make it quite clear that the jury is allotted only the duty of determining guilt. It has no sentencing function.
In State v. Doucet, 177 La. 63, 147 So. 500 (1933), this Court pointed out the danger of mingling the consideration of sentence with the jury's guilt determination, when it stated:
"Under our law, the function of juries in criminal cases is to pass upon the guilt or innocence of the person on trial according to the testimony adduced and the law as given them in the charge by the court. They have nothing to do with the question of punishment, but only with guilt or innocence.
. . . . . .
"Presumably they do their duty. But it is no reflection upon the personnel of any jury to say that they may be influenced in their findings, to some extent at least, by a consideration of the penalty or punishment which may follow their verdict."
The defendant argues that when, as here, a minimum sentence is provided for the crime, the jury participates in sentencing and is entitled to be instructed as to the possible sentences, as well as the availability of probation, parole, or suspension of sentence. We think this argument is insubstantial. It is based upon a misconception of the sentencing function. The sentencing function is the determination of the penal sanction appropriate for the offender within the limits provided by statute and the formal imposition of that sanction upon the offender. Sentencing has two general objectives: deterrence and rehabilitation. In most courts, a presentence investigation by a probation officer is standard procedure. See Council of Judges of the National Probation and Parole Association, Guides For Sentencing pp. 1, 25-27 (1957). The existence of a statutory minimum sentence limits the judge, but it does not transform the jury into a sentencing body.
Two cases have been cited in support of defendant's contentions, State v. Burks, 196 La. 374, 199 So. 220 (1940) and State v. Smith, La., 283 So.2d 470 (1973). Both are distinguishable.
State v. Burks was a capital case, in which the jury had a statutory role in fixing the sentence. The defense complained that the District Attorney in his closing argument stated that he was going to ask the judge to instruct the jury about pardon and commutation of sentence. The judge instructed the jury that a life sentence was "subject to th elaws relative to pardons and parole," but he also instructed the jury that it was not concerned with the sentencing law. The question decided was whether the argument of the District Attorney constituted reversible error. The Court held that it did not, pointing out that the argument was prompted by the plea of the defendant and that the law contained in the judge's special instruction to the jury was correct.
In State v. Smith, supra, the question presented was whether, under Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), it deprived defendants of their constitutional rights for the court to excuse two jurors for cause after the jurors stated that the harshness of the 99-year, maximum sentence for armed robbery could effect their ability to be impartial on the issue of guilt. This Court held that no constitutional rights were violated by excusing the jurors. The propriety of the District Atttorney's questions to the jurors on voir dire was not raised by the defendants or passed upon by this Court.
For the reasons assigned, the conviction and sentence are affirmed.
*829 BARHAM, J., dissents with written reasons.
TATE, J., dissents as to holding on Bills 12 and 14, believing that the jury is entitled to know the penalty provided by the statute under which it may convict.
DIXON, J., dissents. The jury is entitled to know the law.
BARHAM, Justice (dissenting).
I dissent from the majority's disposition of Bills of Exceptions Nos. 12 and 14. I am of the opinion the penalty provision of a criminal statute is part of the law and that the jury is entitled to know the penalty. See the opinion on first hearing, and the dissent on rehearing, in State v. Blackwell, 298 So.2d 798 on our docket, and the dissent in State v. Harris, 258 La. 720, 247 So.2d 847 (1971).
NOTES
[1] "Q. Mrs. Boudreaux, is there any doubt in your mind that the defendant, Nathaniel Lewis, is the same man that robbed you?

"A. None whatsoever.
"Q. What type lighting did you have in your store?
"A. There are two flourescent lights at the ceiling, one in front of the counter and one right over the counter. Two large lights.
"Q. And how close were you to this individual?
"A. Face to face.
"Q. For how long?
"A. Approximately ten minutes when he was beating me and he was in front of the counter.
"Q. And you are positive that that is the man?
"A. I am positive, yes, sir." [Tr. 148]
[2] In a review of State v. Harris, supra, Dr. Dale E. Bennett, an eminent authority on criminal procedure, made this comment in support of the decision: "The remedy, if the penalty for armed robbery is out of line with humanitarian penal concepts, is by legislative action, rather than by judicial perversion of the jury function." See 32 La.L.Rev. 343 (1972).