340 So.2d 208 (1976)
STATE of Louisiana
v.
Roy CLARK, Jr., et al.
No. 57834.
Supreme Court of Louisiana.
October 14, 1976.
Rehearing Denied November 23, 1976.
*212 James J. Gleason, III, St. Tammany Parish Indigent Defender Program, New Orleans, for Brent Mikell.
Ernest Prieto, Mandeville, Thomas A. Lussen, Jr., Baton Rouge, for Roy Clark, Jr.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Woodrow W. Erwin, Dist. Atty., Julian J. Rodrigue, Asst. Dist. Atty., for plaintiff-appellee.
MARCUS, Justice.
Roy Clark, Jr. and Brent Mikell were indicted by the grand jury for the Parish of St. Tammany for the first degree murder of Clyde Sawyer, in violation of La.R.S. 14:30(1). After trial by jury, they were found guilty as charged[1] and were subsequently sentenced to death. On appeal, defendants rely on twenty-one assignments of error for reversal of their convictions and sentences.

ASSIGNMENTS OF ERROR NOS. 1 AND 3
Defendants contend that the trial court erred in denying their motion for a change of venue. They argue that the pretrial publicity precluded them from obtaining a fair and impartial trial.
At the hearing on the motion for a change of venue, defendants introduced certain clippings from articles covering the incident appearing in newspapers[2] having a circulation within St. Tammany Parish. It was also established that the incident was reported in several radio broadcasts and on television. No evidence was adduced that the publicity attending the fatal shooting was inflammatory or sensational.
The grounds for change of venue are set out in article 622 of the Code of Criminal Procedure as follows:
A change of venue shall be granted when the applicant proves that by reason of prejudice existing in the public mind or because of undue influence, or that for any other reason, a fair and impartial trial cannot be obtained in the parish where the prosecution is pending.
In deciding whether to grant a change of venue the court shall consider whether the prejudice, the influence, or the other reasons are such that they will affect the answers of jurors on the voir dire examination or the testimony of witnesses at the trial.
To warrant a change of venue, the burden is upon the defendant to establish that he cannot obtain a fair trial in the parish where the prosecution is pending. Article 622 requires a showing of more than mere knowledge by the public of facts surrounding *213 the offense. It requires, in addition, proof of such prejudice in the public mind that a fair and impartial trial cannot be obtained in the parish. State v. Stewart, 325 So.2d 819 (La.1976); State v. Dillard, 320 So.2d 116 (La.1975); State v. Flood, 301 So.2d 637 (La.1974); State v. Leichman, 286 So.2d 649 (La.1973); State v. Richmond, 284 So.2d 317 (La.1973).
In the instant case, defendants have failed to meet the burden of proof. The evidence consisted of only a few news articles and the fact that the incident had been reported in several radio broadcasts and on television. The news articles were not in the least inflammatory. The offense occurred on February 1, 1975. There was no evidence of any news coverage after March, when the grand jury indictments were returned. The trial commenced on October 13, 1975, some eight months after the offense. The voir dire examination reveals that, while some of the prospective jurors had heard or read of the incident, they had no particular knowledge or recollection of the facts, had formulated no opinion in regard thereto, and stated that they could render a fair and impartial verdict based on the evidence presented at trial.
The trial judge denied the motion on the ground of insufficient evidence to support the change of venue. The granting or denial of change of venue rests within the sound discretion of the trial judge, and his ruling denying the motion will not be disturbed unless the evidence affirmatively shows that the ruling was erroneous and an abuse of judicial discretion. Under the evidence presented to support the motion for change of venue, it cannot be said that the trial judge abused his discretion. Hence, Assignments of Error Nos. 1 and 3 are without merit.

ASSIGNMENTS OF ERROR NOS. 2 AND 4
Defendants contend the trial court erred in denying their motion to quash the indictment grounded on the claims that the death penalty for first degree murder under La.R.S. 14:30 is unconstitutional because it imposes cruel and unusual punishment and that La.R.S. 14:30 is unconstitutional because it permits discretion in the jury to return responsive verdicts in violation of Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972).
After an appeal was taken in this matter, the United States Supreme Court decided Roberts v. Louisiana, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976), declaring unconstitutional the mandatory death sentence for first degree murder. La.R.S. 14:30. In the case of State v. Jenkins, (Waters and Paschal), No. 56,944, La., 340 So.2d 157, handed down Oct. 14, 1976, we held that the appropriate sentence to be imposed for a valid conviction for first degree murder, in light of the Roberts decision, was the most severe penalty established by the legislature for criminal homicide at the time of the offense, R.S. 14:29, et seq., which was, in the Jenkins case, imprisonment at hard labor for life without eligibility for parole, probation or suspension of sentence for a period of twenty years. Therefore, we affirmed the convictions but set aside the death sentences and remanded the case to the district court with instructions to the trial judge to sentence defendants to imprisonment at hard labor for life without eligibility for parole, probation or suspension of sentence for a period of twenty years.[3] Under like circumstances in the present case, we will remand for the imposition of a similar sentence which disposes of the contentions made under these assignments of error.

ASSIGNMENTS OF ERROR NOS. 5 AND 16
Defendants contend that the trial judge erred in denying their motions for mistrial grounded on an allegation of prejudice suffered by them because of their being *214 handcuffed and shackled in the presence of prospective jurors.
Prior to commencement of voir dire examination, defendants were brought into the courtroom in handcuffs and shackles. It is indicated that this is standard procedure for the transportation of prisoners to the courtroom. The trial judge immediately ordered the removal of the handcuffs and shackles and admonished the prospective jurors to disregard this fact in their determination of guilt or innocence of defendants. He also admonished them on defendants' presumption of innocence. It was at this point that defendants' motion for a mistrial was denied (Assignment of Error No. 5). At the close of the state's case, defendants reurged their motion for mistrial which was again denied by the trial judge (Assignment of Error No. 16).
No testimony was adduced that the prospective jurors (or the jurors who served) saw defendants handcuffed and shackled or that it had any effect on their decision in this matter. In denying defendants' motion for a mistrial at the conclusion of the state's case, the trial judge stated:
And we have no way of knowing whether or not any of the jurors, in fact, actually saw it because the jurors were sitting out in the courtroom and the defendants were seated up here, and as soon as you asked that they be unshackled, we went into a big conference about that and it was all taken off.
Although obstreperous conduct may permit a defendant to be gagged and shackled and even removed from the courtroom until he promises to conduct himself properly, Illinois v. Allen, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970), ordinarily it is a denial of a fair trial for an accused to be tried in prison garb or shackled or otherwise exhibited to the trial jury under circumstances which tend to deprive him of his presumption of innocence. State v. Smith, 322 So.2d 197 (La.1975); State v. Brewer, 301 So.2d 630 (La.1974); State v. Tennant, 262 La. 941, 265 So.2d 230 (1972). However, recently the United States Supreme Court in Estelle v. Williams, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (Dec. May 3, 1976) held that even where defendants' request for civilian clothes prior to going to trial was denied by an officer at the jail, he had no cause to complain if he did not later object to his prison attire at trial. The Court further stated that although the state cannot, consistent with the fourteenth amendment, compel an accused to stand trial before a jury while dressed in identifiable prison clothes the failure to make an objection to the court as to being tried in such clothes, for whatever reason, is sufficient to negate the presence of compulsion necessary to establish a constitutional violation.
In the instant case, the record is unclear whether the defendants' handcuffs and shackles were removed upon defendants' request or by the trial judge on his own motion. In any event, it is clear that the trial judge immediately ordered these restraints removed from defendants on his observation of them prior to commencement of the voir dire examination. Moreover, it is well settled that the record must clearly show that the occurrence complained of was prejudicial to the rights of the accused. State v. Jones, 332 So.2d 466 (La.1976); State v. Clark, 325 So.2d 802 (La.1976); State v. Kinchen, 290 So.2d 860 (La.1974); State v. Tennant, 262 La. 941, 265 So.2d 230 (1972); State v. Crockett, 262 La. 197, 263 So.2d 6 (1972); State v. Spencer, 257 La. 672, 243 So.2d 793 (1971). Under the circumstances of this case, we do not find that the incident prejudiced any rights of defendants. Accordingly, the trial judge did not err in denying defendants' motions for a mistrial. Assignments of Error Nos. 5 and 16 are without merit.

ASSIGNMENT OF ERROR NO. 6
Defendants contend that the trial judge erred in denying their challenge for cause of prospective juror Albert Castaneda because of his prior acquaintance with the victim.
Article 797 of the Code of Criminal Procedure provides in pertinent part:

*215 The state or the defendant may challenge a juror for cause on the ground that:
. . . . .
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisified, that he can render an impartial verdict according to the law and the evidence;
(3) The relationship whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict;
. . . . .
The voir dire examination of Castaneda disclosed that he knew the victim for several years prior to his death. The victim had prepared his income tax returns, and they saw each other about four or five times a year. While they did not go out socially or belong to any organizations together, they would occasionally see each other at the store or in town. Since February 1, 1975 (date of the offense), the prospective juror had neither seen nor spoken with any member of the victim's family. Castaneda was steadfast in his assertion that his acquaintance with the victim would not affect in any way his consideration of the guilt or innocence of the defendants and that he would decide the case on the evidence presented. The trial judge found that the juror's acquaintance with the victim was "extremely casual" and would not influence him in arriving at a fair and impartial verdict.
The fact that a prospective juror knows the victim of an offense is not in itself sufficient ground for a challenge for cause under article 797 of the Code of Criminal Procedure. There must be a showing that such fact would influence the juror in arriving at a verdict. State v. Blanton, 312 So.2d 329 (La.1975); State v. Richmond, 278 So.2d 17 (La.1973); State v. Higginbotham, 261 La. 983, 261 So.2d 638 (1972). The voir dire examination must be considered as a whole. State v. Jones, 315 So.2d 650 (La.1975). The trial judge is vested with a wide discretion in determining the qualifications of jurors to serve at trial. Absent a clear showing of abuse of discretion, the trial judge's ruling should not be disturbed on appeal. State v. Jones, supra; State v. Richmond, supra. When the voir dire examination of Castaneda is considered as a whole, it cannot be said that the trial judge abused his discretion in denying defendants' challenge for cause. Assignment of Error No. 6 is without merit.

ASSIGNMENT OF ERROR NO. 7
Defendants contend that the trial judge erred in sustaining the state's objection to the questioning of Deputy John Saucier, Jr. by defense counsel.
Saucier testified on direct examination that he had been called to the scene of the crime for investigation. There he found a trail of blood leading from the lobby of the Holiday Inn to the front end of a Ford Thunderbird parked in the lot of the adjacent Ramada Inn. Saucier testified that he took a sample of the blood from the front end (hood and bumper) of the car by blotting the blood with a piece of cloth. Thereafter, he placed the cloth into a plastic bag and turned it over to Sgt. Herman, who marked the evidence for identification in his presence. After being thoroughly cross-examined, Saucier was asked where they were when the evidence was marked, to which he replied "at the Holiday Inn." He was then asked "where at the Holiday Inn?" The prosecutor's objection was sustained.
The defense was not curtailed in its cross-examination of this witness to its prejudice. Prior to the sustaining of the objection, Saucier had been fully examined on the facts surrounding the taking of the blood sample and its marking by Sgt. Herman at the time. A trial judge is vested with a sound discretion to stop the prolonged, unnecessary *216 and irrelevant examination of a witness, whether such examination be direct or cross. La.R.S. 15:275. We do not find that the trial judge abused his discretion in this instance. Assignment of Error No. 7 is without substance.

ASSIGNMENT OF ERROR NO. 8
Defendants contend that the trial judge erred in denying their request for production of the names of the alleged witnesses interviewed by Deputy Sheriff Nathaniel L. Manning.
The ruling of the trial judge arose in the following context. The state called Deputy Manning and established that he was present at the autopsy performed on the victim. Manning identified the bullet taken from the victim. He also identified his markings on the bullet. On cross-examination, defense counsel asked him if he had been at the Holiday Inn on the night of February 1, 1975 (date of the crime). He replied he had not. He was then asked if he had interviewed any witnesses in connection with the case. Manning answered that the next morning (February 2), he had spoken to several people at the Holiday Inn. Then the question: "Do you recall the names of those people to whom you spoke?" was followed by a negative reply. Next, Manning was asked: "Did you make notes of the people to whom you spoke?" His reply was: "I believe so, but I don't have them with me." When asked where the notes were located, Manning answered that they were probably in his desk. At this time, defense counsel called for production of these notes. The state objected. The trial judge correctly denied the request for production.
Manning's testimony did not relate to the contents of these notes nor did he have them with him on the stand. Hence, defense counsel was not entitled to production of same. State v. Whitehurst, 319 So.2d 907 (La.1975); State v. Lane, 302 So.2d 880 (La.1974). Defendants aver that the denial of their request for the names of the witnesses interviewed by Manning prevented them from discovering a possible favorable witness to the defense, which constituted a suppression of possible favorable evidence in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). We find no merit to this contention. There is no showing that the people seen by Manning were in fact "witnesses." On the contrary, Manning testified, after the ruling on the objection, that the people with whom he spoke were a guest and employees of the Holiday Inn, none of whom knew anything about the incident. Moreover, he stated that his notes did not contain the content of these conversations. Assignment of Error No. 8 is without substance.

ASSIGNMENT OF ERROR NO. 9
Defendants contend that the trial judge improperly curtailed their cross-examination of the witness Anthony Brown.
Brown testified that Roy Clark borrowed a car (1971 blue Cadillac) from him around seven o'clock on the night of the crime and returned it about midnight. The complaint is that defendants were not allowed to question Brown regarding the fact that the car had transmission trouble for the purpose of showing that the car could not have been operated at a speed adequate for defendants' use on the night of the crime.
There is no merit to this contention. On direct examination, Brown testified that the "transmission was messed up" and "wasn't working properly." The transmission had been giving him trouble for about a week. He stated that he kept transmission fluid in the car because of the malfunctioning transmission. He further testified that after his car was returned to him by Clark on the night in question it was necessary for him to take it to the service station for some transmission fluid. Even after getting the fluid, he was able to drive the car only a block or so because it was not functioning properly. On cross-examination, defense counsel thoroughly questioned the witness in regard to the problem he had been having with his car's transmission. Finally, when questioned by defense counsel as to whether he had taken it on a prior occasion to a service station, the trial judge *217 interrupted the question, stating that the prior transmission trouble was irrelevant. In view of the full interrogation of Brown on this issue and the establishment of the transmission trouble as a fact on the night the car was borrowed by Clark, as well as prior thereto, we are unable to say that the trial judge abused his discretion in curtailing the questioning of Brown on this issue. The trial judge is vested with a sound discretion to stop prolonged, unnecessary and irrelevant examination of a witness whether such examination be direct or cross, and even though no objection be urged by counsel. La.R.S. 15:275. Hence, Assignment of Error No. 9 lacks merit.

ASSIGNMENT OF ERROR NO. 10
Defendants contend the trial judge erred in sustaining the state's objection to the further questioning of Anthony Brown, a state witness, regarding a statement allegedly made by Brown to Ronald W. Guth, one of the defense attorneys, on October 10, 1975. It is argued that the defense was attempting to show that this statement was at variance with an earlier statement given by Brown to the sheriff's office on March 4, 1975.
The ruling of the trial judge complained of in this assignment of error arose in the following context. On cross-examination of Brown, defense counsel (Guth) established that there was a meeting on the Friday before trial (October 10, 1975) at which Brown, Guth, other defense counsel (Prieto and Lussen) and defendants Roy Clark and Carl Benion were present. Guth asked questions of Brown and of the defendants and supposedly took notes at this meeting. During his cross-examination of Brown, Guth made it appear that the yellow pad in his hand contained these notes and that this was a "statement" of Brown. He kept questioning Brown about the responses made by him during the October 10 meeting. Brown indicated that some of the statements about which he was being questioned were not made by him but rather by the defendants who were also present at the time. The trial judge cautioned Mr. Guth that, while he could ask the witness leading questions, he could not testify on his behalf. The judge further instructed counsel that, if he wanted to impeach the credibility of Brown by proof of a prior inconsistent statement, he must lay a proper foundation by first asking him whether he made such a statement and then calling his attention to the time, place and circumstances and to the person to whom the alleged statement was made. If the witness does not distinctly admit making such statement, evidence that he did make it would be admissible. La.R.S. 15:493. This was not in fact done. Moreover, it was not shown that the notes taken by Guth contained the "statement" of Brown and no other. The trial judge ably explained the reasons for his ruling:
[T]he witness has clearly given me the impression that the contents of that yellow sheet that you have there are not only your recollection but the notes that you thought were significant to what he said, but they also contain what you got from one of the defendants at the same time and they are all meshed together. It may be good information for you to think through and to do with, but to cross examine him with, it is not an inconsistent statement of his and I'm going to sustain the objection.
In view of the foregoing, we do not find that the trial judge erred in his ruling. Assignment of Error No. 10 is without merit.

ASSIGNMENT OF ERROR NO. 11
During the redirect examination of Anthony Brown, the state asked: "What usually happens to someone who testifies?" The objection of defendants was overruled and forms the subject of this assignment of error.
In State v. Chambers, 263 La. 1080, 270 So.2d 514 (1972), when the state's attorney, on cross-examination of defense witness, asked him what would happen when he returned to the penitentiary, defense counsel objected on the ground that it called for speculation. We found no error in the trial *218 judge's ruling that this line of questioning on cross did not call for a speculative answer since the answer called for facts within the peculiar knowledge of the witness. As in Chambers, we find no error in the ruling of the trial judge. Assignment of Error No. 11 is without merit.

ASSIGNMENTS OF ERROR NOS. 12, 13 AND 15
Defendants contend that the trial judge erred in permitting in evidence two oral inculpatory statements made by Brent Mikell while he was being treated at Charity Hospital for a gunshot wound to the face. The first statement was made to Sgts. Herman and McGeehee at approximately 5:20 a.m. on February 2, 1975 (Assignments of Error Nos. 12 and 13), and the second was given to Detectives Woodall and Schneider on February 3, 1975 (Assignment of Error No. 15). Defendants argue that, because of the physical and mental condition of Mikell at the time, he was incapable of giving a free and voluntary statement and of knowingly and intelligently waiving his Miranda rights.
Mikell was shot in the jaw by the victim, Sawyer, at the Holiday Inn during the perpetration of an attempted armed robbery. This occurred in Slidell, Louisiana at 11:00 p.m. on February 1, 1975. At about 11:50 p.m., a Charity Hospital ambulance was flagged down by three men near the down ramp of I10 at Orleans Avenue and Derbigny Street in New Orleans. One of the men was Roy Clark, who informed the occupants of the ambulance that they had a man (Mikell) with a gunshot wound in the back seat of their car. Mikell was taken in the ambulance to Charity Hospital where he was admitted at 11:55 p.m. He was suffering from a gunshot wound to the face. Heavy bleeding required suctioning enroute to the hospital. In response to a telephone call received at about 4:50 a.m. (February 2), Sgts. Herman and McGeehee went to the hospital where they questioned Mikell, who was lying on a bed in the hallway. This was about 5:20 a.m. He was fully advised of his Miranda rights prior to being questioned. The questioning lasted only four or five minutes and was terminated when either a doctor or nurse arrived to give Mikell some type of medication. Although Mikell's face was bandaged and he was receiving an I.V. drip and a blood transfusion, the officers testified that he was completely conscious at the time and gave no indication that he was in extreme pain or in shock or that he was sedated. According to the officers, while Mikell's speech was low (they had to bend down to hear him), it was not impaired. Rather, it was slow and deliberate and gave them the impression that he was considering the questions before responding. The officers considered that Mikell fully understood the Miranda rights given by them to him before he freely and voluntarily responded to their questions.
The second oral inculpatory statement was given by Mikell to Detectives Woodall and Schneider on February 3, 1975. These officers testified that they arrived at Room W402 in Charity Hospital at about 6:30 p.m. on February 3 to serve an arrest warrant on Mikell. They fully advised him of his Miranda rights and then questioned him for about a half hour. According to their testimony, Mikell was alert at the time and did not appear drugged. He did not complain of pain nor did he appear to be in pain. There was no indication of shock or sedation. The entry in the hospital records for February 3, 1975 states moderate swelling to the face, head bandage in place, patient taking fluids, no air-way difficulties, patient encouraged to ambulate as much as possible. There appears no entry that morphine or a like sedative had been administered.
Dr. James Winslow, an oral surgeon, testified that he first saw Mikell at about seven o'clock on the morning of February 2. Dr. Winslow had spoken to Dr. Peterson, who was in charge on the night Mikell was admitted and was familiar with his condition. On February 6, Dr. Winslow performed surgical procedures on Mikell, who had sustained a fracture to the right side of his mandible (lower jaw). Wires were inserted to hold the jaw in a stable condition. *219 A previously fractured tooth was extracted. Dr. Winslow debrided the gunshot wound to the face and removed a metallic fragment therefrom.
Before a confession can be introduced in evidence, the state must affirmatively show that it was made freely and voluntarily and not under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. La.R.S. 15:451. It must also be established that an accused who makes a confession during custodial interrogation was first advised of his Miranda rights. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
Defendants rely on State v. Graffam, 202 La. 869, 13 So.2d 249 (1943) where this court found that the trial court erroneously allowed introduction of a statement given an hour after a gunshot wound to the heart, while the defendant was in the hospital. In Graffam, there was evidence that the accused was suffering from acute shock, bleeding profusely and had been administered morphine. There was also expert medical testimony to the effect that the mental functioning of a person suffering from shock as described in the report was definitely impaired. This court concluded that, under the facts presented by the record, defendant's confession was not freely and voluntarily made. The present record is devoid of such proof. On the contrary, Officers Herman and McGeehee testified that, although Mikell's face was bandaged, an I.V. drip and blood transfusion were being administered at the time he gave his statement during the early morning hours after his admission to the hospital, he was completely conscious and rational; he was not bleeding profusely, gave no indication that he was in extreme pain or in shock, or that he had been administered sedating medication, such as morphine. Likewise, the testimony of Detectives Woodall and Schneider was to the same effect in regard to Mikell's physical and mental condition at the time he made the second inculpatory statement on February 3.
Under the facts presented by this record, we are convinced that the state affirmatively proved that Mikell's oral inculpatory statements were freely and voluntarily made after having been fully advised of his Miranda rights. Hence, the trial judge did not err in admitting the statements in evidence.
Assignments of Error Nos. 12, 13 and 15 are without merit.

ASSIGNMENT OF ERROR NO. 14
Defendants objected that a state witness, Doussan D. Rando III, was permitted to testify that he field tested certain substances for the presence of blood and that the tests were positive without any attempt being made to qualify the witness as an expert.
Rando testified that he was a criminalist at Louisiana State Police Crime Lab and that, in connection with his duties as a criminalist, he was called upon to obtain certain evidence from a blue Cadillac. He testified that in examining the car, he observed certain spots that appeared to be blood. He then field tested the substances for the presence of blood which resulted in a positive finding.
Ordinarily, a witness must be qualified before he gives an expert opinion, La.R.S. 15:466. In the present instance, while this witness might not be considered as having been properly qualified as an expert prior to expressing an opinion, no prejudice resulted from his testimony, for later at trial Walter Strata, Jr., who was duly qualified as an expert in the field of analysis and classification of blood, testified that the substance removed by Rando from the blue Cadillac was Group AB human blood. Hence, Assignment of Error No. 14 is without merit.

ASSIGNMENT OF ERROR NO. 17
After the close of the state's evidence, defendants moved for a directed verdict of not guilty. Without considering the merits of defendants' motions, the trial judge denied the motions based on the fact that article 778 of the Code of Criminal Procedure had been previously amended by the legislature to eliminate the authority of *220 the court to grant a directed verdict of acquittal in a jury trial.
Defendants contend that there was no evidence of an attempted armed robbery, an essential element of the crime of first degree murder as defined in La.R.S. 14:30(1) (the statute under which they were tried). Therefore, they argue that the elimination of a right to a directed verdict of acquittal to a defendant who either elects to be tried by jury or who is compelled to be tried by jury because he is charged with a capital offense constitutes a denial of equal protection and due process rights as guaranteed under both the federal and state constitutions.
Article 778 of the Code of Criminal Procedure was amended by Acts 1975, No. 527, § 1. Defendant was tried after the effective date of this amendment. The amendment eliminated the authority of the court to grant a directed verdict of not guilty in a jury trial. The authority of the court to grant a directed verdict of acquittal is strictly a trial procedure. A defendant has no vested or absolute right in procedural matters; therefore, procedural matters are subject to legislative control. No substantive right of an accused is affected by a change in the law which deals only with procedures attached to a trial. There was no divesting of a substantive right as a result of this amendment. Hence, the elimination of the authority of the court to grant a directed verdict of acquittal in a jury trial is not a denial of defendants' due process rights. Nor is there any merit in defendants' claim that they have been denied equal protection of the law. Since the classification implicit in the statute is reasonable and applies to all persons similarly situated, there is no denial of equal protection. We find that the trial judge was correct in not considering the merits of defendants' motion for a directed verdict of acquittal in this jury trial. Assignment of Error No. 17 is without merit.

ASSIGNMENT OF ERROR NO. 18
Defendants contend that the trial judge erred in overruling objections made by them during the cross-examination by the state of the defense witness Eileen Gibbs.
The witness first testified that she was with Carl Benion at his mother's house on Saturday night, February 1, 1975 (date of crime). She stated that she recalled the particular day because on that Sunday Morning (February 2) at about one or two o'clock, she heard a news broadcast about a shooting and attempted armed robbery in Slidell. On cross-examination, the prosecutor questioned the witness about her use of the word "attempted" in her description of the broadcast of the robbery and her knowledge that nothing had been taken by the perpetrators. Defense counsel's objection on the ground of harassment was overruled.
The prosecutor then proceeded to question the witness as to her whereabouts on the first day of each month for the several months immediately preceding the trial of this matter. He also questioned her about the day of the week of each of these dates. Defendants' objection on the ground of immateriality and irrelevancy was overruled.
The rulings of the trial judge were correct. The prosecutor's questions regarding her use of the word "attempted" in her description of the broadcast and her statement that nothing had been taken by the perpetrators were proper cross-examination and did not constitute harassment. Only a few questions were asked before the objection was made. Also, the prosecutor's questions directed at the witness' recollection of her whereabouts on the first day of each month for the several months preceding the trial and the day of the week of each of these dates was not irrelevant and immaterial in light of the witness' testimony on direct examination. Rather, it was proper cross-examination.
Rulings of the trial judge in his regulation of proper direct or cross-examination of witnesses will not be disturbed on appeal in the absence of an abuse of discretion. We find no such abuse of discretion here. Assignment of Error No. 18 is without merit.

*221 ASSIGNMENTS OF ERROR NOS. 19 AND 20
Defendants claim that the trial judge erred in permitting the state to improperly impeach defense witness Maurice Gibbs by use of prior arrests in violation of La.R.S. 15:495. Defendants' motion for a mistrial was denied.
On cross-examination, not only was Gibbs allowed to be questioned about his arrest on the night before the trial, but he was also allowed to be interrogated concerning eight other arrests.
The credibility of a witness may not be impeached by asking him whether or not he has been arrested; his impeachment can only be secured as to prior convictions. La.R.S. 15:495; State v. Lewis, 328 So.2d 75 (La.1976). Hence, the ruling herein allowing Gibbs to be interrogated concerning his prior arrests was clearly error. However, we are unable to say that the rights of defendant Clark were so prejudiced thereby as to require the reversal of his conviction.
Maurice Gibbs' alibi testimony, when viewed as a whole, does not in fact establish alibi for Clark. Gibbs merely testified that on the night of February 1, 1975 he saw Roy Clark at the Top Cat on Lowerline and Coolidge Court in New Orleans where a "record hop" was in progress. Although he stated that he was with Clark "[p]ractically all night, all during the record hop that was going on," nowhere does he say how long the record hop lasted. The witness only specifically mentioned seeing Clark sitting on the porch at nine o'clock. Terry Peterson was also called by the defense to establish alibi for Clark. She testified that she also saw Clark on the night of February 1, 1975 at Sam Shoal's Bar located at the corner of Lowerline and Coolidge Court in New Orleans. However, she stated that the last time she saw him on that night was at ten o'clock.
In our view, the "alibi" witnesses did not positively establish an alibi during the entire night of February 1, 1975 or more specifically at the time of the offense which occurred at about eleven o'clock on that night. Therefore, the improper impeachment of Gibbs does not result in reversible error. It should be observed that both the ambulance driver and attendant identified Clark as the man who flagged down the ambulance near the down ramp of the I-10 at Claiborne Avenue and Derbigny Street in New Orleans at 11:50 p.m. on February 1, 1975. Anthony Brown also testified that he saw Clark at about midnight on that night at Orleans and Claiborne (about a block from the down ramp of the I10). It was at this time that Clark returned the car that he had borrowed from Brown earlier in the evening. Glenda Patterson testified that Roy Clark came to her house shortly after midnight and told her that Mikell had been shot and was in the hospital. Assignments of Error Nos. 19 and 20 are without merit.

ASSIGNMENT OF ERROR NO. 21
Defendants filed separate motions for a new trial grounded on the same contentions urged under previous assignments of error. For the reasons set forth therein, we find no merit in the alleged errors reurged in the motions for a new trial. Additionally, defendants assert in their motions for a new trial that the verdict is contrary to the law and evidence. The ruling of the trial judge denying a motion for a new trial grounded on a claim that the verdict is contrary to the law and evidence presents nothing for our review. Only where it is alleged that there is no evidence at all of some essential element of the crime charged is a question of law presented which this court can review. State v. Jack, 332 So.2d 464 (La.1976). However, one of the alleged errors reurged in the motions for a new trial was that the court erred in denying defendants' motions for a directed verdict at the close of the state's case. In the motion for directed verdict, defendants contended that there was no evidence of an attempted armed robbery, an essential element of the crime of first degree murder as defined in La.R.S. 14:30(1) (the statute under which they were tried). Accordingly, we will construe defendants' claim in their motions for a new *222 trial reurging as error the denial of the motion for directed verdict as an allegation of no evidence of an essential element of the crime charged, i.e., attempted armed robbery.
Our review of the record discloses ample evidence of attempted armed robbery by defendants Mikell and Clark. Without attempting to elaborate on the evidence adduced at trial since it is only necessary that we find some evidence of an attempted armed robbery, we point to the oral inculpatory statements made by Mikell at the hospital, as well as the testimony of Deputy David Wainwright, who stated that on May 5, 1975, while transporting Mikel and prisoners to Charity Hospital, Mikell told him that on the night of the offense, "I walked in, told him this was a holdup and he grabbed the gun and started shooting." Certainly this constitutes some evidence of an attempted armed robbery. Moreover, there was some evidence of Clark's participation in the offense charged. Hence, the motions for a new trial were properly denied. Assignment of Error No. 21 is without merit.

DECREE
For the reasons assigned, the convictions are affirmed, but the death sentences imposed on defendants are annulled and set aside and the case is remanded to the Twenty-Second Judicial District Court, Parish of St. Tammany, with instructions to the judge to sentence defendants to imprisonment at hard labor for life without eligibility for parole, probation or suspension of sentence for a period of twenty years.
SUMMERS, J., concurs in the conviction but dissents from the penalty holding for the reasons assigned in the dissent to State v. Lee, La., 340 So.2d 180.
DIXON, J., concurs, not being in accord with the treatment of assignments 5 & 16 and Assignments 19 & 20.
CALOGERO, J., concurs in result only.
DENNIS, J., concurs in the result.
NOTES
[1] Carl Benion was jointly indicted and tried with defendants Roy Clark, Jr. and Brent Mikell; however, the jury found him not guilty.
[2] Times-Picayune, Slidell Daily Times, St. Tammany Parish Farmer, The Mandeville Banner, and The Daily Sentry News of Slidell.
[3] The author of this opinion concurred in State v. Jenkins, No. 56,944, La., 340 So.2d 157, handed down Oct. 14, 1976, noting approval of the sentence imposed but for reasons different from those expressed by the majority.