281 So.2d 630

**Herman Lee MOFFETT**

v.

**STATE of Alabama.**

**S.C. 351.**

Supreme Court of Alabama.

June 21, 1973.

Rehearing Denied Aug 30, 1973.

Gibbons, Stokes & Clark, Mobile, for appellant.

William J. Baxley, Atty. Gen., and Sarah M. Greenhaw, Sp. Asst. Atty. Gen., for the State.

FAULKNER, Justice.

Herman Lee Moffett appeals from a conviction by a jury in the Circuit Court of Mobile County, of the offense of rape. His punishment was fixed at ten years in the State penitentiary. Moffett alleges two errors. He alleges first, that it was error for the trial judge to allow him to be

brought into open court before the jury, handcuffed to a deputy sheriff. Second, he alleges error for the introduction into evidence over his objection a pistol and articles of his clothing. The pistol was taken from Moffett's bedroom by police officers when he was arrested at his home in Mobile County. The clothes were worn by him when he was taken away by the officers.

On the evening of January 22, 1971, at 9:30 P.M., the prosecutrix, a white female, went to the Capri Club on Halls Mill Road, Mobile, Alabama, a place where imbibing is sanctioned. There she ordered a Tom Collins. It was a long drink as it appears she had only the one during the evening. She visited and talked with friends until past midnight. She left the club for home, alone in her two-door 1963 Buick, with "bucket" seats, and headed toward Chickasaw. As she was driving down Halls Mill Road, a motor vehicle came up behind her and began to blink its lights from low beam to high beam. She turned into McVay Drive after stopping at a traffic signal. She was still followed by the vehicle. The blinking of the lights continued. She stopped at another traffic light, and a man yelled to her that sparks were flying beneath her car. She thanked him and drove on to Mobile Dodge. She stopped her car, left the motor running, got out, and looked under it. The defendant pulled his vehicle behind her. She told him that she did not see any sparks. He said that there were, and if the sparks got to her gas tank, the car would catch fire and burn. She told him she would try to make it home. He said that he would follow her " 'a little piece on down the road, and if it keeps on doing it, I'll brighten and dim my lights again, and let you know * * *.' " She drove off and got on the Beltline. When he had driven a short distance, he began to blink his lights again. She stopped her car again. The defendant parked his panel truck behind her car. They were close to Treadwell Ford. He said the sparks were still flying and advised her to go to a good mechanic that he knew. She said she might do that or might just go on home. When she prepared to drive off, he opened her car door and stuck a gun in her chest. She fought him for a few minutes; he told her to "shut up" or "he would blow my goddamn brains out." She tried to get out of the car and began blowing the horn. Moffett struck her on the head and hand with the gun. She bled from the wounds. Moffett drove her car to a garage. The prosecutrix was forced to undress, and Moffett raped her on the back seat. After the rape he drove back to his parked vehicle. On the way Moffett threatened to kill the prosecutrix if she called the police.

When Moffett drove away in the panel truck, the prosecutrix drove to a friend's house and stated that she had been raped. She was in a highly emotional state of mind. There was blood on her face and clothes. Her friend called the police. She was taken to Mobile General Hospital, and was released the following day.

Detective Jack Bishop accompanied by other officers made the investigation. They went to Moffett's house and knocked on the door. Moffett came to the door. The officers admitted themselves and informed Moffett that he was under arrest for rape. Moffett requested that he be permitted to dress and went to his bedroom followed by Detective Bishop. As Moffett was dressing, Bishop looked at the head of the bed and next to a pillow was a chrome-plated pistol. He picked up the pistol. Moffett was taken to the police station and advised of his rights. He was allowed to call his father. Moffett told his father over the telephone that he was under arrest for raping a white woman. No one had told Moffett that he was arrested for raping a white woman.

There were no warrants of any kind.

When Moffett came into court for his trial, he was handcuffed to a deputy sheriff. Moffett was seated at his counsel's

table and the handcuffs were removed. He alleged that he was prejudiced by being brought into court in handcuffs and moved to strike the present venire and have another venire brought in. The motion was made outside the presence of the jury. The court denied the motion.

"THE COURT: . . . I will present any questions to the jury venire as to their prejudice or feelings about this that you can present to me as a matter of their right to serve on this case.

"MR. GIBBONS: Judge, my feeling . . . is that the damage is already done, and that in the Court attempting to determine prejudice . . . would merely highlight further the prejudicial condition in this case."

■ We are not persuaded that there is reversible error because the defendant was brought into the courtroom handcuffed to a deputy sheriff. The handcuffs were immediately removed from him after he was brought into the courtroom during the trial. Edwards v. State, 279 Ala. 371, 185 So.2d 393 (1966). A sheriff who is charged with the responsibility of safely keeping an accused has the right in his discretion to handcuff him when he is bringing him to and from the courtroom, when the handcuffs are removed immediately after he is taken into the courtroom. Smith v. State, 247 Ala. 354, 24 So.2d 546 (1946); Faire v. State, 58 Ala. 74 (1877). The record shows that defendant was in jail at the time of his trial.

■ The next alleged error involved admission into evidence the chrome-plated pistol seized by officers while in defendant's home. Notwithstanding the fact that it was seized without a valid warrant, we are of the opinion that it was legally seized under the "plain view" doctrine. This doctrine has come under the scrutiny of the United States Supreme Court. The officer made the arrest of this defendant without a warrant. Title 15, § 154, Code of Alabama 1940, Recompiled 1958.[1] He had a lawful right to be where he was at the time of the arrest. Consequently, the pistol being in plain view of the officer, was subject to seizure and could be introduced into evidence. Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Observing the pistol was not a search. Williams v. State, 43 Ala.App. 343, 190 So.2d 556 (1966); Reese v. State, 49 Ala.App. 167, 269 So.2d 622 (1972).

■ Finally, it was not error to admit articles of defendant's clothing into evidence. These were the articles of clothing with which defendant dressed when he was arrested. Hubbard v. State, 283 Ala. 183, 215 So.2d 261 (1968).

We have searched the record and find no error.

Affirmed.

HEFLIN, C. J., and MERRILL, COLEMAN and HARWOOD, JJ., concur.

---

1. § 154. Arrest by officer without warrant; when and for what allowed.—An officer may also arrest any person, without warrant, on any day and at any time, for any public offense committed, or a breach of the peace threatened in his presence; or when a felony has been committed, though not in his presence, by the person arrested, or when a felony has been committed, and he has reasonable cause to believe that the person arrested committed it; or when he has reasonable cause to believe that the person arrested has committed a felony, although it may afterwards appear that a felony had not in fact been committed; or on a charge made, upon reasonable cause, that the person arrested has committed a felony.