LEIGH M. CLARK, Supernumerary Circuit Judge.
Appellant was convicted of murder in the first degree of Willie James Wilson and sentenced to life imprisonment.
The evidence is without dispute that defendant killed Wilson by stabbing him with a knife, as alleged in the indictment. She relied upon the principle of self-defense and defense of her children who were in the house where she lived at the time she admitted she struck the fatal blow while she and the victim were outside. She had stabbed him once before, the same night, during an argument between the two outside a cafe in Brundidge, Pike County, Alabama. At the cafe the victim had been cursing and asking for some keys. The owner of the cafe had asked both of them to leave the cafe. Defendant testified that while outside the cafe the victim walked to the back of his automobile and said he was going to get something from his trunk to kill her, at which time she cut him with a knife while he was leaning over the trunk. They both then went in the cafe again but were told to leave again, which they did.
Defendant testified that she drove the victim to a hospital with a view of having him examined or treated; the victim made her turn around before they arrived at the hospital and they then went to her home in Brundidge. She said that Wilson was still cursing and said, “I am going to go in the house and kill those children and then I am going to come back and get you!” As he was leaning over and reaching under the seat, she stabbed him in the chest, from which he died. She went to a neighbor’s house and called the police and the rescue squad and then went to her house.
Defendant met the officers (Coroner Booth, Sheriff Anderson and Officer Wheeler) as they arrived. She invited them in, telling them she had nothing to hide. She was there advised fully of her Constitutional rights. The Coroner asked if they could look around, and she told them to look all they wanted that she didn’t care as she had nothing to hide. She turned on a light in the kitchen. The house had three rooms, a kitchen, a bedroom and a living room. According to State’s witnesses, when questioned at her house about the death of Wilson, she denied knowing anything about it or about the presence of his body at the front of the house. She admitted, in testifying on the trial, that she told the officers at her house that she did not kill Wilson.
Defendant was taken to jail by Sheriff Anderson. While at defendant’s house Coroner Booth had another official call and left. Deputy Wheeler remained at the house.
*275 The next morning appellant made a written statement to the effect that she killed the deceased in defense of herself and her children.
A major contention of appellant is that the court was in error in admitting in evidence a knife, which the evidence shows was the weapon with which defendant killed Wilson, and some towels that were in the living room of defendant by the chair in which she was sitting. The towels had some blood stains on them and were seen by the sheriff while he was at the house, but were not taken until after he had returned that night to the house.
Deputy Wheeler testified that while he remained at the house after the sheriff and coroner had gone, he was told by an aunt of the children that they wanted to tell him something. He walked up to them and one of the children said, “. . . My mother killed that man . . . ” He said she was crying at the time and he thereafter asked her “. . . Where is the knife . .” and she told him she would show him. The children took him into the house and pointed to a chest of drawers. One of the drawers was broken and he could see the knife in it. He then came out of the house, secured it, “and left one responsible person in front of the door to let no one in until he could get back.” He then went to the Brundidge Police Department and located Sheriff Anderson; they returned to the house and took possession of the knife, as well as the towels. This was a short time after 12:30 A.M.
The failure of the officers to take the towels and to observe and take the knife while appellant was in the house does not of itself make illegal the subsequent taking of them. The evidence conclusively shows that defendant invited the officers into the house and unreservedly, voluntarily and understanding^, consented to the search of the house. Even so, there was no special effort on the part of anyone of them to discover anything; they viewed only matters that were obvious. There was no probing into corners, opening of drawers, nor looking behind curtains or under beds. The observation of that which is in plain view does not constitute a search. Moffett v. State, 291 Ala. 382, 281 So.2d 630, cert. denied, 414 U.S. 1161, 94 S.Ct. 924, 39 L.Ed.2d 114; Reese v. State, 49 Ala.App. 167, 269 So.2d 622, cert. denied 289 Ala. 750, 269 So.2d 625; Williams v. State, 43 Ala.App. 343, 190 So.2d 556.
In Moffett and in Reese, the seizure involved was without a warrant and made while the officers were in defendant’s home in the process of arresting him on probable cause that he had committed a felony.
By whatever name the manucapture of the towels and the knife may be called, there was nothing unconstitutional or otherwise illegal about it.
“There are six exceptions under which warrantless searches have been upheld: (1) plain view, (2) with consent voluntarily and knowingly given, (3) incident to a lawful arrest, (4) hot pursuit or emergency situations, (5) exigent circumstances coincidental with probable cause as in the case of movables, and (6) stop and frisk situations. Daniels v. State, 290 Ala. 316, 276 So.2d 441.” Cook v. State, 56 Ala.App. 250, 320 So.2d 764 (1975)
To any argument that the defendant, who was in jail at the time the items were taken, could not have removed them before a search warrant could have been obtained for them, the answer is that she could have well been released on bail before a search warrant could have been obtained. The record shows that she was released on bail, although not until several days after the alleged crime. Furthermore, notwithstanding the fact that the children and their aunt, who then were in possession of the premises, called the attention of one of the officers to the knife, they presumably were friendly to defendant and could have readily secreted the knife before its physical custody could have been obtained by process of a search warrant.
During the direct examination of defendant the following occurred:
“Q All right. Mrs. Langston, you love those children, don’t you?
*276 “A Yes, I do.”
Immediately, counsel for the State objected in rather strong language directed at defendant’s counsel; defendant’s counsel replied in kind. Thereupon the court said:
“I am going to sustain the objection. Ladies and Gentlemen of the jury, you will disregard the answer. It has nothing to do with this case.”
We doubt that the jury ever thought for a minute that defendant did not love her children, and we see nothing substantially harmful to either party in either allowing or in disallowing such question and answer. The question would have been better if it had not been in leading form. This of itself justified the court’s action in excluding the answer. Code of Alabama, Recompiled 1958, Tit. 7, § 444. The nature of the question is such that, especially when placed in leading form, the witness would probably answer it affirmatively more quickly than opposing counsel could object, which apparently occurred.
Appellant takes offense at the action of State’s counsel in asking defendant on cross-examination if she had been convicted in 1970 of grand larceny in Houston County, Alabama. She immediately replied, “No sir, I was not.” Defendant’s counsel thereafter moved for a mistrial. Appellant seems to challenge the good faith of State’s counsel by implying that State’s counsel “doesn’t have a record of recognition of a conviction.” Code of Alabama, Recompiled 1958, Tit. 7, § 435 permits a witness to be cross-examined as to prior convictions involving moral turpitude. After a colloquy among the court and counsel for the respective parties, the court sustained an objection of defendant to the question, denied the motion for a mistrial and stated to the jury “You will completely disregard that question.” The question was proper, but a negative answer cures any error that might have been in permitting a question to be asked. White v. State, 41 Ala.App. 54, 123 So.2d 179; Dixon v. State, 38 Ala.App. 395, 85 So.2d 156.
During direct examination of defendant the following occurred:
“Q All right. You heard the testimony from several police officers that you called them and they came to the scene that night — came to your house that night, that you didn’t know anything about this body being out in your front yard? Do you remember hearing that testimony?
“A Yes, I heard that testimony.
“Q Did you tell them that?
“A No.
“Q What did you tell them that you recall?
“A That I recall?
“Q Yes.
“A I just told them no. — I just told them that I didn’t kill him that’s what I told them.
“Q All right could you explain to us why you told them that?
“MR. CALHOUN: We object to the question calling for an explanation why the witness did something. It calls for an uncommunicated mental operation of the witness. We think she can say what she told them but we object to any explanation why she told them a certain thing.
“THE COURT: I am going to sustain.”
In so ruling, the court fell into error, we think. We held that prejudicial error was committed in a strikingly similar situation in Johnson v. State, 49 Ala.App. 356, 272 So.2d 282, cert. denied 289 Ala. 745, 272 So.2d 286, in which it was stated:
“In our opinion the court erred in not allowing the appellant to answer the question propounded above. The two statements made by appellant to the sheriff are contradictory to each other and are further contradictory to the testimony of the appellant at the trial.
“We think the case at bar is controlled by the rule set out in Ingram v. State, 34 Ala.App. 597, 42 So.2d 30, reversed and remanded, 252 Ala. 497, 42 So.2d 36.

“We therefore, hold under the authorities above set out that the witness should have been allowed to explain the discrepancy between his statements made to the sheriff and his testimony at the trial.”
*277 For the error indicated, a reversal is required.
The foregoing opinion was prepared by Supernumerary Circuit Judge LEIGH M. CLARK serving as a judge of this Court under Section 2 of Act No. 288 of July 7, 1945. The judgment of the court below is hereby reversed and the case remanded.
REVERSED AND REMANDED.
All the Judges concur.