CLARK, Retired Circuit Judge.
In a two-count indictment defendant-appellant was indicted for the unlawful possession of amphetamine in one count and meprobamate in the other; the one is a Schedule III controlled substance and the other a Schedule IV controlled substance of the Alabama Uniform Controlled Substances Act. Code of Alabama, Tit. 22, §§ 258(25)-258(60). The jury returned a general verdict finding defendant guilty, and the court imposed a sentence of ten years imprisonment in the penitentiary.
Officers George Washington, Roderick Roy and Walter Pickett of the Mobile Police Department testified that about 3:00 P.M., October 7, 1976, they and Officer Havard went to room 114 of the Town House Motel on Government Street in Mobile, with a warrant for a search of the room, and found defendant by himself in the room. They said that upon knocking at the door and one of them stating that they were the police and had a search warrant, defendant opened the door and admitted them. After a search of the room, a patting down of defendant and finding five white tablets and one red capsule in, on or about a hat in the room, defendant was taken into custody. The witnesses said they saw the hat on defendant’s head, two saying he had it on his head as they entered the room and the other stating that it was either then or “just after I entered the room.”
A toxicologist, whose qualification was admitted, testified she ran an analysis on the contents of the red capsule and on the white tablets, that the red capsule contained amphetamine and the white tablets meprobamate.
Defendant offered no evidence on the trial. He testified on a pretrial hearing of a motion to suppress the evidence.
It is insisted that the trial court was in error in overruling defendant’s motion to suppress the evidence, which alleged “that the search was in violation of the Fourth Amendment to the Constitution of the United States.”
Officers Washington and Roy testified on the motion to suppress substantially in accordance with their testimony on the trial as above narrated. In addition, it was shown by Officer Washington that about 10:00 A.M. on October 7, 1976, they made an affidavit before Municipal Court Judge Wilson and obtained a warrant to search “Room 114 of the Town House Motel, 1061 Government St., occupied by a white male named Eddie Williams and a white female named Kathy New.” The affidavit was as follows:
“COURT’S EXHIBIT NO. 1
“AFFIDAVIT FOR SEARCH WARRANT 2139
)
“STATE OF ALABAMA )
“COUNTY OF MOBILE )
DOCKET NO._
CASE NO._
“Before me, the undersigned Municipal Judge of the City of Mobile, Alabama, personally appeared Officer George Washington who being duly sworn deposes and says:
“That he (has reason to believe) that (xxxxxxxx)
xxxxxxxxxxxx
“(on the premises known as) Room 114 of the Town House Motel, 1061 Government Street occupied by a white male named Eddie Williams and a white female named Kathy New
“in the City of Mobile, Alabama, or its police jurisdiction, there is now being concealed certain property, namely
“(here describe property)
“Heroin
“which xxx (here give alleged grounds for search and seizure)
*1118 “Is illegally stored and kept at the above described address
“And that the facts tending to establish the foregoing grounds for issuance of a Search Warrant are as follows:
“I am Officer George Washington of the Mobile Police Department, Mobile, Alabama. I am presently assigned to the Narcotic Division. On October 7, 1976,1 received the following information from a reliable informant who has given me reliable information within the past 6 months. This information has led to the arrest and conviction of 2 drug violators in 2 cases in the City Court of Mobile, Alabama. The informant stated that within the past 12 hours, he was at the Motel known to informant as The Town House Motel, 1061 Government Street, Room # 114, which is occupied by a white male named Eddie Williams, and a white female named Kathy New. While at the motel at that time, the informant observed Eddie Williams and Kathy New go into the Motel Room 114. Eddie Williams was carrying a small plastic bag containing a brown powdered substance. This substance was represented by Eddie Williams and Kathy New to be heroin.
“I know that heroin is commonly packaged in this manner and has this appearance. I have frequently come into contact with persons using and handling this drug in my duties as a narcotic officer.
/s/ George J. Washington
Signature of Affiant
Official Title, if any
“Sworn to and subscribed before me, this 7th day of October. 1976.
“Court’s
“Exhibit /S/_
“No.l Judge of Municipal Court
City of Mobile, Alabama
1 A search warrant must be served in the daytime unless the affidavit states positively that the property is on the person or place to be searched, in which case it may be served at any time.”
Officer Washington testified also that at his appearance before Judge Wilson he made an additional affidavit similar to the Court’s Exhibit No.' 1 above, but different in that the place to be searched was described as:
“A 1962 Ford Van, white in color, bearing 1976 Alabama License # 2P-5388, registered to a Ronald Carlson and driven by a white male named Eddie Williams, frequently parked in parking lot of the Town House Motel at 1061 Government Street.”
In the second affidavit, Officer Washington also stated:
“While at the Motel at that time, the informant observed Eddie Williams and Kathy New get out of a 1962 White Ford Van, bearing 1976 Alabama License # 2P-5388, registered to a Ronald Carlson, and driven by Eddie Williams.”
Officer Washington testified that in addition to the information he had received from an informant as stated in the affidavits, which information he received about 8:00 or 9:00 o’clock on October 7, he had learned about two weeks before from other informants, and informed Judge Wilson, that a “white male called Eddie, driving a white van would be in the downtown area, often, at night, selling from the van, selling heroin.” Mr. Washington said his information came from two separate and unrelated informants, that he had a conversation with Judge Wilson at the time he applied for the search warrant and told Judge Wilson about talking with the informants, who he said “More or less told me the same thing about this to me,” and after his conversation with Judge Wilson, and taking an oath administered to him by Judge Wilson, Judge Wilson signed the search warrant.
In the course of the hearing of the motion to suppress, defendant’s counsel explained his basis for the motion as follows:
“Well, if it’s a question of the reliability, I can tell you right now, I’m not attacking the affidavit or the warrant on the basis of reliability. I’m not attacking it on the basis of the time element. I’m not attacking it on the, let’s see, now, I’m not attacking it on the basis of the time element or the reliability of the informant. The point that I’m attacking it on is the question of whether or not corroboration of the informant’s information was sufficient and adequate enough to overcome the test of impartial, of the impartial magistrate, having some evidence of corroboration other than the testimony of the informant, himself.”
*1119 In Proposition of Law I, counsel for appellant states:
“Information from an unnamed informant must be corroborated with enough independent facts supplied by the affiant, before an affidavit in support of a search warrant can engender in the mind of an impartial magistrate a finding of probable cause for the issuance of a search warrant.”
and cites as support for such proposition Spinelli v. U. S., 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637; Davis v. State, 46 Ala.App. 45, 237 So.2d 635; Neugent v. State, Ala., 340 So.2d 52, rev’g Ala.Cr.App., 340 So.2d 43. In arguing the proposition advanced, appellant merely states:
“Spinelli and Davis -require independent corroboration of the tips from unnamed informants. The recent Neugent case held otherwise. The appellant wishes to speak to this modulating subject.”
We do not agree that the search warrant in this case does not meet the requirements of Spinelli. At any rate our duty is to follow what the Supreme Court of Alabama holds has been held by the Supreme Court of the United States.
Defendant testified on the hearing of the motion to suppress that the officers broke into the room instead of his opening the door for them. This, as stated above, was in conflict with the testimony of the officers.
There was no violation of defendant’s Fourth Amendment right to freedom from unreasonable searches and seizures.
During the State’s rebuttal opening statement to the jury, the following occurred:
“MR. DODSON: When they walked into the room, they found the man with the hat on, and the girl was — .
“MR. BRUTKIEWICZ: I’m going to object. He’s arguing the case, Judge — .
“THE COURT: Well, he can argue the evidence. There has been a little reaching — .
“MR. DODSON: I — I’m the only one who’s talked about the facts out there. He’s been blowing smoke in here — .
“THE COURT: All right. I’m not going to try the lawyers, now. Let me state that right now. I don’t want any of that in my Courtroom, please.
“MR. BRUTKIEWICZ: Your Honor, I move for a mistrial — .
“THE COURT: You make a proper and appropriate statement of response to what he intends to prove, and let’s confine it to what you propose to prove.”
Thereafter, counsel for defendant continued to press a motion for mistrial, which the court overruled after explaining to the jury that the attorneys were advocates for their respective sides. Appellant urges as error the action of the court in overruling the motion for a mistrial.
As the opening statement of counsel for defendant is not in the record, we are unable to say whether he was blowing smoke therein, but if it was, it would have been better for counsel for the State to have objected to it rather than to have so characterized it in his rebuttal statement. However, his statement was not of such an ineradicable prejudicial nature as to warrant a mistrial. Whatever wound there was was partly assuaged at least by the court’s remarks. No other relief was requested. We conclude that no reversible error is shown as to the particular matter, as was held in George v. State, 54 Ala.App. 90, 304 So.2d 908, as to a similar remark of State’s counsel relative to opposing counsel by saying that he would “cloud the picture.” We find little difference in smoke and cloud as agencies of obfuscation.
During the cross-examination of Officer Washington, defense counsel repeatedly asked him as to the name of the person who had registered for the room in which the controlled substance was found. He was asked whether it was James Owens. He replied in the affirmative. Defendant’s counsel showed by the witness that Owens was not at the room at the time of defendant’s apprehension and arrest. On re-direct examination, State’s counsel showed by the *1120 witness that Owens was not in Mobile on October 7, that he had been arrested by the witness in Texas and was in jail at that time. During the course of the re-direct examination along this line, defendant’s counsel objected to anything about James Owens “unless he knows of his own personal knowledge.” It was shown that the witness was the person who arrested Owens. Before any further objection was made, testimony was given by the witness as follows:
“Q. Have you been out to Texas?
“A. I have.
“Q. Did you see James Owens?
“A. I did.
“Q. You want to tell us the circumstances under which you saw him?
“A. I went out with $100,000.00 to buy forty ounces of heroin.
“Q. Prom James Owens?
“A. James Owens.
“Q. How long had he been out there?
“A. He went prior to the Thursday that I arrested him.
“Q. You had $100,000.00?
“A. Correct.
“Q. How much heroin?
“A. Forty — .”
From that point the record continues on the same subject as follows:
“MR. BRUTKIEWICZ: Judge, I’m going to object to any introduction of any evidence about James Owens and any criminal experiences that he may have been involved with. We are not dealing with guilt by association. We are not dealing with James Owens. We’re dealing with this man right here. Any evidence of anybody else, whether it be Jesse James or James Owens is completely beyond the purview of this — .
“THE COURT: I understand that the proffer is made to rebut the inferences concerning the residency of the room?
“MR. BRUTKIEWICZ: That’s correct, sir. But this goes way beyond the scope of the relevancy of the facts at issue in this particular case.
“THE COURT: Overruled.
“MR. BRUTKIEWICZ: It’s remote, prejudicial, highly prejudicial, and it shows evidence of guilt by association, which I understand we don’t deal with in American jurisprudence.
“THE COURT: Is it offered for the purpose of rebutting the inference as to the residency of the room, Mr. Dodson?
“MR. DODSON: Yes, sir.
“THE COURT: Overrule the objection.
“MR. BRUTKIEWICZ: We except, sir.
“Q. How long had Mr. Owens been in Texas and not in Mobile in room 114 at the Town House?
“MR. BRUTKIEWICZ: Well, Judge, I’m going to object on the same basis, and I’m going to object to it, too, on the basis of the formulation of the testimony itself. We can’t base the evidence on reports, or we can’t base evidence on hearsay, unless he personally knows, any type of testimony he might adduce would be hearsay, and, of course, objectionable.
“THE COURT: Did the witness testify that he was? That he was out there, and saw him in Texas?
“Q. Were you out there?
“A. I was.
“THE COURT: Testify to what you know, and not to what someone told you, please.
“Q. You were in Texas, yourself?
“A. Yes, sir.
“Q. And you saw James Owens there? Yourself?
“A. I did.
“Q. And you went out there with $100,-000.00?
“A. Correct.
“Q. To buy forty ounces of heroin?
“A. Correct.
“MR. BRUTKIEWICZ: Object, of course
“THE COURT: All right. Let’s move along, please.
“Q. How long had he been out there prior to October the 7th, 1976?
“MR. BRUTKIEWICZ: Of course, I object, and I understand your Honor’s overruled me.
*1121 “A. What was the question?
“THE COURT: How long had you been out there before October the 7th?
“A. I think I — .
“MR. DODSON: I think my question was, if you know, how- long had James Owens been out there?
“THE COURT: All right. If you know.
“A. I think he got there the Sunday prior to October the 7th.
“Q. The Sunday before October the 7th?
“A. That’s correct.”
We do not doubt, as counsel for the State urged on the trial, that perhaps counsel for defendant unduly emphasized by repetition the absence of James Owens from the hotel room at or about the time of the arrest of defendant. It seems that the trial court construed the evidence as to the absence of James Owens as giving rise to an “inference as to the residency of the room” which could be rebutted by the State. Even so, we are persuaded that the evidence admitted in some of its most prejudicial aspects went beyond the purview of such a rebuttal. Assuming that the State was entitled to show Owens’ confinement in jail in Texas at the time of the occupancy of the room by defendant and defendant’s arrest therein, we look in vain for any relevancy, either as a matter of affirmative evidence or in rebuttal of any inference as to “the residency of the room,” in the testimony of the witness that he had gone to Texas with $100,-000.00 to purchase forty ounces of heroin from James Owens.
We are not unaware of the obvious likelihood of a connection between defendant and Owens in traffic in heroin, as shown by the ex parte affidavits forming a basis for the search warrants for the room and the van, as well as the testimony on the pretrial hearing of the motion to suppress that defendant had been engaged in selling heroin on the streets of Mobile. It is to be kept in mind, however, that such testimony forms no basis for any decision other than as to the validity of the search and seizure, as ruled upon by the trial court after a hearing conducted out of the presence of the jury.
There may be some reasonable doubt whether counsel for defendant with appropriate timeliness and definiteness objected to the testimony which was so obviously prejudicial to defendant, but no such position was taken by the State or the court on the trial, and no such position is taken on appeal. This strengthens our view that we independently take that under all of the circumstances defendant adequately raised the question as to the admissibility of the testimony of Officer Washington that he went to Texas with $100,000.00 to buy forty ounces of heroin from James Owens. We admire and respect the forthrightness with which the learned trial judge handled the matter and with which defendant’s counsel on the trial and on appeal have met the issue, but we must disagree with their conclusions and find that the admission of such evidence constituted prejudicial error requiring a reversal of appellant’s conviction.
The injury to appellant was exacerbated by the reference of counsel for the State, in his closing argument to the jury, to the $100,000.00 and the forty ounces of heroin. His argument as shown by the record, without the immediately preceding context, was as follows:
“MR. DODSON: —He told you. Because on the Sunday before, he was out there with $100,000.00 of State money, buying 40 ounces of heroin from James Owens.”
Immediately thereafter the following occurred:
“MR. BRUTKIEWICZ: Hold on just a minute. I am going to object to this. Now, it’s not in the evidence, it’s highly prejudicial, and I don’t know what you said, but you never said that. The reason they know that James Owens was in that room is because — .
“MR. DODSON: Was not in that room.
“MR. BRUTKIEWICZ: Was not in that room is because what now?
“MR. DODSON: Because you asked George Washington where he was and you said, ‘Do you know for sure?’ And he said, ‘Yes, I was there.’ And we got into the $100,000.00 business with the heroin, *1122 and you objected then, and it was overruled.
“MR. BRUTKIEWICZ: Said that this Officer was out in Texas buying $100,-000.00 worth of opium from a James Owens?
“MR. DODSON: Forty ounces of heroin.
“MR. BRUTKIEWICZ: I object to this, Judge, because it’s bringing in other parties and other crimes, and has absolutely nothing in the world to do with this Defendant, and the only purpose that it could be brought up in the trial in chief or brought up before the Jurors in the Closing Argument would be to convict this man by guilt by association. And it has no probative value in the trial of this case, and I objected to it when it was brought up, and I’m going to object to it, now. It has nothing in the world to do except to try to prejudice this Jury against this Defendant on the whole basis of McCarthyism, or guilt by association.
“THE COURT: Gentlemen, as I told you earlier, you are the sole judges of the facts. When we began this trial, I told you that we are dealing with two very able counsel, and in the Opening Statements they would be inclined, they are overly anxious and eager for their particular side. But that what they said would not be evidence in this case, but merely their conclusions of what the evidence showed or said. Now, you, too, have heard the evidence. You can judge who made this remark, how it came up and in what manner it came up, and what the effect of it is. You are going to be the sole judge of the facts, but what these gentlemen say in their argument is not evidence. It is merely their impression, their inferences, their conclusion of what the evidence said, what it means, and you will have the final sayso. Overrule your objection, Mr. Brutkiewicz. I deny your motion. Let’s go ahead, please.”
Defendant’s further possible connection with traffic in heroin, which was not an issue in this case, was emphasized by testimony of Officer Washington during cross-examination as follows:
“Q. So it took four of y’all to get this, is that right? As a matter of fact, four of y’all went there, and you walked away with Eddie Williams and this, what I have in my hand?
“A. No, we walked away with a couple of ounces of heroin, too.
“Q. You walked away with a couple of ounces of heroin?
“A. Yes.
“Q. In this room?
“A. No, from the motel.”
This occurred prior to the injection into the case of the matter of the $100,000.00 and heroin and Owens in Texas and brought forth an immediate motion for mistrial by defendant’s counsel, which was argued by counsel for both sides out of the presence of the jury. The court announced that it would overrule defendant’s motion for a mistrial but that it would instruct the jury to disregard the evidence with reference to the two ounces of heroin. State’s counsel asked that he be allowed to argue further, and thereupon further argument was made by counsel for both sides, the jury was returned to the box and the trial court in a plenary statement instructed the jury to disregard the particular evidence. We think the court was correct in overruling defendant’s motion for a mistrial at that time in the light of all the circumstances, particularly the likelihood that the answer of the witness was to some extent called for by the questions on cross-examination, and the purging of the leaven by the positive instructions of the court, but its significance as a background on a consideration of the question of the extent of injury to defendant by the $100,000.00 — heroin—Texas — Owens matter is not to be ignored.
On the morning of the second day of trial, just as the court had reconvened, defendant moved for a mistrial and a lengthy hearing was conducted thereon out of the presence of the jury, at which testimony was given by defendant and others as to defendant’s being handcuffed when he was brought to the courtroom, where the handcuffs were removed just after he and the accompanying deputy had entered the *1123 courtroom and had taken three or four steps therein. There is no claim that there was any intentional mistreatment of defendant as a prisoner, and the evidence is clear that he had not misconducted himself «in the trial of the case. In finding that there was no error in overruling defendant’s motion for a mistrial, we follow what was held in Jackson v. State, Ala.Cr.App., 342 So.2d 452, in line with previous authorities on the subject.
“We are not persuaded that there is reversible error because the defendant was brought into the courtroom handcuffed to a deputy sheriff. The handcuffs were immediately removed from him after he was brought into the courtroom during the trial. Edwards v. State, 279 Ala. 371, 185 So.2d 393 (1966). A sheriff who is charged with the responsibility of safely keeping an accused has the right in his discretion to handcuff him when he is bringing him to and from the courtroom, when the handcuffs are removed immediately after he is taken into the courtroom. Smith v. State, 247 Ala. 354, 24 So.2d 546 (1946); Faire v. State, 58 Ala. 74 (1877). The record shows that defendant was in jail at the time of his trial.” Moffett v. State, 291 Ala. 382, 281 So.2d 630 (1973), cert. denied 414 U.S. 1161, 94 S.Ct. 924, 39 L.Ed.2d 114.
During the closing argument of counsel for the State, he said, “Did you know that every murderer, rapist, and killer, Charles Manson, Jerry Chatom — .” Then followed an interruption by defendant’s counsel and a lengthy colloquy, among counsel for both sides and the trial court, in which counsel for the State was asked by the court to complete the sentence he was going to make before he was interrupted, and counsel for the State said that he was going to say that they were “presumed innocent.” Defendant’s counsel objected and moved for a mistrial, stating that counsel for the State was putting defendant “in the category of a Charles Manson, a killer out in California that murdered a number of people, and I don’t know whether the Appellate Court would know it or not, but Jerry Chatom is a Mobile criminal who is charged with murdering two Deputy Sheriffs, and committing numerous other crimes.” Counsel for the State contended that it was counsel for defendant and not the State that “puts his defendant in the category of these people, not me.”
We can understand the apparent view of the court that defendant’s counsel was not correct in the ground of his objection that State’s counsel was attempting to put defendant in the category of Manson and Chatom, but we deem the argument of counsel for the State objectionable. It is not necessary for us to determine whether the overruling of the objection made by defendant’s counsel constitutes reversible error.
For the error indicated, the judgment of the trial court is to be reversed and the cause remanded for another trial.
The foregoing opinion was prepared by Retired Circuit Judge Leigh M. Clark, serving as a judge of this Court under the provisions of § 6.10 of the New Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
REVERSED AND REMANDED.
TYSON, P. J., and HARRIS and BOOK-OUT, JJ., concur.
BOWEN, J., dissents.
DeCARLO, J., joins in dissent.