McMILLAN, Judge.
The appellant, Kennedy Minnifield, was found guilty of robbery in the first degree and was sentenced to life imprisonment. A mistrial was granted in a case which was consolidated for trial with the case at hand *247 because a juror was found to have been improperly influenced by a newspaper article.
Prior to the commencement of his trial, the appellant attempted to escape from the courtroom. He was apprehended on the stairway and subsequently tried while wearing handcuffs and leg irons.
I.
The appellant argues that the trial court erred in denying his motion for mistrial and continuance because his appearance in handcuffs and leg irons, following his attempted escape, so prejudiced him that he was denied an impartial trial. The appellant further contends that he was denied a fair trial because his motion for mistrial and continuance based on his current mental condition was denied.
“‘... All of the authorities we have studied are agreed that to bring a prisoner before the bar of justice in handcuffs or shackles, where there is no pretense of necessity, is inconsistent with our notion of a fair trial, for it creates in the minds of the jury a prejudice which will likely deter them from deciding the prisoner’s fate impartially....’
“Not to be overlooked, however, is the distinction made in Clark [v. State, 280 Ala. 493, 496, 195 So.2d 786, 788 (1967) ] between handcuffing a prisoner in taking him to and from the court and in keeping him in handcuffs while he is being tried, unless there is reasonable ground for belief that such restraint is necessary to prevent his escape or his rescue.”
Taylor v. State, 372 So.2d 387, 389 (Ala.Cr. App.1979). For other cases wherein Alabama courts have held that a defendant was not entitled to a mistrial on the ground that he appeared before the jury in handcuffs, see Moffett v. State, 291 Ala. 382, 281 So.2d 630 (1973), cert, denied, 414 U.S. 1161, 94 S.Ct. 924, 39 L.Ed.2d 114 (1974); Cushing v. State, 455 So.2d 119 (Ala.Cr. App.1984); Young v. State, 416 So.2d 1109 (Ala.Cr .App.1982).
Furthermore, “[t]he accused must take any and all precautionary steps to eliminate any possible prejudice in order to later complain of prejudice.” Turner v. State, 473 So.2d 639, 641 (Ala.Cr.App.1985) (wherein the appellant argued that he did not receive a fair trial because prospective jurors observed him dressed in prison garb when he was brought into the courtroom).
“ ‘It is essential to the proper administration of criminal justice that dignity, order, and decorum be the hallmarks of all court proceedings in our country. The flagrant disregard in the courtroom of elementary standards of proper conduct should not and cannot be tolerated. We believe trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case. No one formula for maintaining the appropriate courtroom atmosphere will be best in all situations. We think there are at least three constitutionally permissible ways for a trial judge to handle an obstreperous defendant like Allen: (1) bind and gag him, thereby keeping him present; (2) cite him for contempt; (3) take him out of the courtroom until he promises to conduct himself properly.’ Illinois v. Allen, 397 U.S. 337, 343-44, 90 S.Ct. 1057, 1060-61, 25 L.Ed.2d 353 (1970).”
Wright v. State, 432 So.2d 510, 512 (Ala.Cr. App.1983).
Finally, the trial court cured any error in this regard by proper instructions to the jury. Young v. State, 416 So.2d 1109,1112 (Ala.Cr.App.1982); Racine v. State, 51 Ala. App. 484, 286 So.2d 890, cert, denied, 291 Ala. 684, 286 So.2d 896 (1973).
As to the appellant’s competency to stand trial, the record indicates that the appellant was the subject of numerous psychiatric examinations and, after treatment, was adjudged competent to stand trial. The appellant filed a “Motion for Psychiatric Evaluation,” a hearing was held on the motion, and the appellant was ordered removed to Taylor Hardin Secure Medical Facility in Tuscaloosa. Additionally, the appellant filed a motion to be re-examined by a psychiatrist and to have funds approved to hire a private psychiatrist to assist him in preparation for trial. This mo *248 tion was granted. The trial judge also indicated that he had personally reviewed the appellant’s entire psychiatric case file and felt that he was competent to stand trial.
The appellant has failed to prove any abuse by the trial court in denying his motion for a continuance or mistrial on the basis of mental incompetency.
“The standard of appellate review for a ruling that there are no reasonable grounds to doubt the accused’s sanity is whether the trial judge abused his discretion. Miles v. State, 408 So.2d 158, 162 (Ala.Cr.App.1981), cert, denied, 408 So.2d 163 (Ala.1982). The trial court’s order is an abuse of discretion if ‘(1) arbitrary or (2) unsupported by evidence or human reasoning.’ Minniefield v. State, 47 Ala. App. 699, 704, 260 So.2d 607, 612 (1972).”
Lytle v. State, 453 So.2d 1342, 1344 (Ala. Cr.App.1984) (emphasis in original). Nothing in the record convinces this court that the trial court’s decision was arbitrary or unsupported by the evidence.
The appellant also argues that prejudicial publicity led to a denial of his right to a fair and impartial trial. In his argument, the appellant refers to a newspaper article which was not published until after a verdict in the first case was reached, but before the jury reached a verdict on the second case. The record reflects that the judge received a note from a juror which indicated that during the night, after the jury had voted and reached a verdict on the first case, but prior to reaching a verdict on the second case, “an acquaintance read something about the case in the newspapers and told the juror about it.” The juror then indicated in the note that he or she “ha[d] no choice but to vote a certain way based on what the acquaintance said.” The judge reasoned that the note indicated that the juror would no longer vote on the basis of the evidence. He therefore granted a mistrial as to the second case. This communication to the juror was not made until a verdict had been reached in the first case, and therefore, as to the first case, the appellant was not prejudiced by pretrial publicity.
II.
The appellant contends that the prosecutor’s use of six of his seven challenges to exclude black persons from the petit jury deprived him of his right to an impartial jury and to equal protection of the law. In order to establish a prima facie case of purposeful racial discrimination in the selection of a petit jury, a defendant must show that he is a member of a cognizable racial group and that the prosecutor exercised his peremptory challenges to remove members of the defendant’s race from the venire. Second, a defendant is entitled to rely on the fact that peremptory challenges constitute a jury selection practice that permits “those to discriminate who are of a mind to discriminate.” Last, a defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used this practice to exclude members of the venire from the petit jury on account of their race. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). “Once the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors.” Batson v. Kentucky, 476 U.S. at 97, 106 S.Ct. at 1723.
At trial, the prosecutor explained his strikes as follows:
“[Prosecutor]: For the record, let me state at the outset that as His Honor has pointed out to begin with, there were 10 blacks on the venire. One was struck for cause by His Honor. During the striking process between [the defense counsel] and myself I struck, I believe, six. That there are three on the jury at the present time.
“All right. My reasons for striking them were not based on any prejudice because of race. Number 142, Miss Johnson, was struck because she had previously served on a jury in which a murder charge had come back on a lesser-included offense of criminally negligent homicide.
“Number 156, Mrs. King, was struck because she had sons about the same age as the defendant.
*249 “Number 22, Miss Bass, same exact reason. She had sons, 3 sons, 3 boys. They fell within the same age group as the defendant.
[[Image here]]
“[Prosecutor]: Number 154, King, single, and he falls in about the same age group as this defendant.
“Number 200, Mr. Murray, was unemployed and single. Also, further note he falls right in about the same age group as the defendant here.
“Number 152, Kincaid, was a dropout of law school.”
The Alabama Supreme Court, in Jackson v. State, 516 So.2d 768 (Ala.1986), has described the prosecution’s burden in giving reasons for the strikes, as follows:
“ ‘The reasons given in response to the court’s inquiry need not be equivalent to those for a challenge for cause. If the party shows that the challenges were based on the particular case on trial, the parties or witnesses, or characteristics of the challenged persons other than race, then the inquiry should end and jury selection should continue.’ ”
Jackson v. State, supra, at 772, quoting State v. Neil, 457 So.2d 481, 487 (Fla.1984).
“In light of the circumstances of the case, the trial court must use its discretion in determining whether the prosecutor’s reasons are adequate.” Jackson v. State, supra, at 772-773. Because the prosecutor’s strikes were explained and were not “whimsical or fanciful,” id., we find no abuse of discretion by the trial court.
AFFIRMED.
All the Judges concur.