355 S.E.2d 410

**STATE of West Virginia**

v.

**Jimmy R. LINKOUS.**

**No. 17177.**

Supreme Court of Appeals of West Virginia.

March 19, 1987.

---

Maria Fakade, Atty. Gen., Charleston, for appellant.

Phillip D. Mooney, Oak Hill, for appellee.

MILLER, Justice:

The defendant, Jimmy R. Linkous, seeks to overturn his first degree murder conviction without a recommendation of mercy on the primary ground that when he was initially brought into the courtroom for his trial, he was handcuffed. He also complains of the trial court's refusal to grant a mistrial when several jurors witnessed a scuffle that he had with court bailiffs. Additional evidentiary errors are assigned. We conclude that there was no reversible error committed.

The defendant and several other prisoners were brought into the courtroom where the court was disposing of some criminal matters prior to starting the trial of the defendant's case. The jury had not been impaneled, but prospective jurors were in the courtroom. The defendant arrived in the courtroom handcuffed to another prisoner and the handcuffs were then removed.

Prior to the beginning of the selection of the jury, the defendant's counsel moved that a new jury panel be selected because he believed the existing panel would be prejudiced by seeing the defendant enter the courtroom in handcuffs. The trial court refused the defense motion, stating that the period that the defendant appeared in handcuffs was brief. The trial court also stated that other defendants were in the courtroom who had been brought in a similar fashion so that the defendant had not been singled out. Defense counsel did not ask to voir dire the jury over this incident.

The defendant relies upon Syllabus Point 3 of *State v. Brewster*, 164 W.Va. 173, 261 S.E.2d 77 (1979), which was based on *Estelle v. Williams*, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976), and *State ex rel. McMannis v. Mohn*, 163 W.Va. 129, 254 S.E.2d 805 (1979), *cert. denied*, 464 U.S. 831, 104 S.Ct. 110, 78 L.Ed.2d 112 (1983): [1]

---

**1.** Both *Estelle* and *McMannis* involved the relat-   ed issue of the propriety of trying a criminal

"A criminal defendant has the right, absent some necessity relating to courtroom security or order, to be tried free of physical restraints." [2]

■ There is a major distinction between *Brewster* and this case as to the extent of time the defendant was in restraints before the jury. In *Brewster*, the defendant was required to remain in physical restraints throughout his entire criminal trial. This case involves only an initial appearance in handcuffs which were removed shortly after he was brought into the courtroom. Most courts that have dealt with this question conclude that ordinarily it is not reversible error nor grounds for a mistrial to proceed to try a criminal defendant with a jury panel that may have seen him in handcuffs for a brief period of time prior to trial. *United States v. Figueroa-Espinoza*, 454 F.2d 590 (9th Cir. 1972); *Williams v. State*, 361 So.2d 1116 (Ala Crim.App.1978); *Moffett v. State*, 291 Ala. 382, 281 So.2d 630 (1973), *cert. denied*, 414 U.S. 1161, 94 S.Ct. 924, 39 L.Ed.2d 114 (1974); *State v. George*, 98 Ariz. 290, 403 P.2d 932 (1965); *Hamrick v. People*, 624 P.2d 1320 (Colo.1981); *Duonnolo v. State*, 397 A.2d 126 (Del.Super.Ct.1978); *People v. Hyche*, 63 Ill.App.3d 575, 20 Ill.Dec. 395, 380 N.E.2d 373 (1978), *aff'd*, 77 Ill.2d 229, 32 Ill.Dec. 893, 396 N.E.2d 6 (1979); *Marion v. Commonwealth*, 269 Ky. 729, 108 S.W.2d 721 (1937); *State v. Clark*, 340 So.2d 208 (La.1976), *cert. denied*, 430 U.S. 936, 97 S.Ct. 1563, 51 L.Ed.2d 782 (1977); Annot., 90 A.L.R.3d 17, 125 (1979).

■ The common reason given is that there exists an obvious security need to have some physical restraints on prisoners when they are being moved from the jail to the courthouse. Such security reduces their chance of escape and also protects the public safety. The better practice is to remove restraints before a prisoner is brought before the jury. We agree with the court's observation in *Hamrick*, 624 P.2d at 1322, that "reasonable efforts should be made to prevent prisoners under such restraints from being seen by prospective or actual jurors." *See also People v. Herndon*, 98 Mich.App. 668, 296 N.W.2d 333 (1980).

The defendant's second and third grounds of error are closely related and involve the trial court's denial of his motion for a mistrial after several members of the jury saw the defendant scuffling with law enforcement officials at the trial. This incident occurred during an *in camera* hearing on the second day of trial. The defendant unlocked and proceeded out a door leading into a hallway on the first floor of the courthouse. When a law enforcement officer attempted to stop him, a scuffle ensued during which the defendant was wrestled to the floor and handcuffed by law enforcement officers. The jury panel happened to be in the hallway where they could see the defendant on the floor being handcuffed.

The defendant moved for a mistrial at this point, which the trial court denied. After the jury verdict, the court permitted defense counsel to question the jurors with regard to what they had observed as to the scuffle. Eight of the jurors stated what

---

defendant in prison attire. We stated in Syllabus Point 2 of *McMannis*:

"A criminal defendant has the right under the Due Process Clause of our State and Federal Constitutions not to be forced to trial in identifiable prison attire. However, where a criminal defendant is tried in identifiable prison attire without any initial objection, and the offense for which he is tried is prison-related such that the jury necessarily knows from the evidence that he was in prison at the time of the commission of the offense, the error will be deemed not prejudicial under the doctrine of harmless constitutional error."

**2.** In *Brewster*, we remanded the case for a hearing to determine if there were sufficient security

reasons to justify the defendant being tried in physical restraints. The original judge who had tried the case had died so that the hearing was conducted by a new judge. He concluded that the restraints were justified. We declined to accept an appeal from this ruling and the defendant filed for habeas corpus relief in federal court. The federal district court denied relief, but on appeal, a divided panel of the United States Court of Appeals for the Fourth Circuit in *Brewster v. Bordenkircher*, 745 F.2d 913 (4th Cir.1984), held the defendant had been denied due process of law. On a rehearing en banc, the panel's decision was reversed. *Brewster v. Bordenkircher*, 767 F.2d 81 (4th Cir.1985) (en banc).

they had seen. Two of the eight indicated that they had discussed with each other the incident during the jury deliberations. The defense counsel then moved to set aside the verdict and to grant a new trial, which motion the court denied.

■ It appears to be rather uniformly held that misconduct or disruptive behavior on the part of a defendant during the course of a criminal trial will not establish grounds for his obtaining a mistrial. *E.g., Hayes v. State,* 340 So.2d 1142 (Ala.Cr.App. 1976); *Hammond v. United States,* 345 A.2d 140 (D.C.App.1975); *State v. Olinghouse,* 605 S.W.2d 58 (Mo.1980); *Chamberlain v. State,* 453 S.W.2d 490 (Tex.Crim. App.1970); Annot., 89 A.L.R.3d 960 (1979). The basis for this rule is aptly stated in *Hayes v. State,* 340 So.2d at 1143:

"[W]e hold that one cannot purposefully create grounds for a mistrial by deliberately causing a disturbance during the trial. See *Illinois v. Allen,* 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). Such a conclusion is obviously necessary, otherwise a defendant faced with imminent conviction could disrupt the trial, prejudice himself in the jury's eyes and, therefore, be entitled to another trial."

■ The Supreme Court in *Illinois v. Allen,* 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970), dealt extensively with the various remedies that a court could take with regard to a disruptive defendant. It held that the Sixth Amendment's right to be present at one's criminal trial does not preclude the removal from the courtroom of an unruly defendant and concluded with this statement, with which we also agree:

"Nor can the accused be permitted by his disruptive conduct indefinitely to avoid being tried on the charges brought against him. It would degrade our country and our judicial system to permit our courts to be bullied, insulted, and humil-

iated and their orderly progress thwarted and obstructed by defendants brought before them charged with crimes." 397 U.S. at 346, 90 S.Ct. at 1062, 25 L.Ed.2d at 360–61.

Accordingly, we conclude that the trial court did not abuse its discretion in refusing to declare a mistrial.

The defendant also raises certain evidentiary errors. He contends that the trial court erred in permitting the State's chief medical examiner, Dr. Ervin Sopher, to testify as to the manner and cause of the victim's death based on an autopsy report prepared by a Dr. Kshirsagar, the assistant medical examiner.

The assistant medical examiner who conducted the autopsy was in Chicago at the time of trial and did not appear to testify. Dr. Sopher testified that the cause of death was a shotgun wound to the chest based upon the autopsy report. The record further shows that Dr. Sopher is responsible for the care, custody, and control of postmortem medical records.

■ We find no merit in this assignment of error because no objection to the admissibility of Dr. Sopher's testimony was made at trial. This court ordinarily will not consider alleged evidentiary errors that have not been preserved by specific and timely objection at trial, as stated in Syllabus Point 9 of *State v. Humphrey,* 177 W.Va. 264, 351 S.E.2d 613 (1986):

"Our general rule is that nonjurisdictional trial error not raised in the trial court will not be addressed on appeal." [3]

*See also State v. Manns,* 174 W.Va. 793, 798, 329 S.E.2d 865, 871 (1985); Syllabus Point 1, *Carter v. Taylor,* 172 W.Va. 696, 310 S.E.2d 213 (1983); Syllabus Point 1, *State v. Smith,* 169 W.Va. 750, 289 S.E.2d 478 (1982) (per curiam); Syllabus Point 17,

---

**3.** Even if we were to address the issues, the evidence complained of would be admissible under *State v. Jackson,* 171 W.Va. 329, 298 S.E.2d 866 (1982), where another assistant medical examiner who did the autopsy was unavailable and Dr. Sopher testified as to his report. We cited W.Va.Code, 61–12–13, which makes autopsy reports of the medical examin-

er's office admissible as evidence in any court proceeding, and other relevant authorities, and concluded in Syllabus Point 5: "Any physician qualified as an expert may give an opinion about physical and medical cause of injury or death. This opinion may be based in part on an autopsy report."

*State v. Thomas,* 157 W.Va. 640, 203 S.E.2d 445 (1974).

■ The defendant also assigns as error the admission of shotgun shell pellets and plastic wadding taken from the victim's body by Dr. Kshirsagar. Again trial counsel did not object to the introduction of this evidence and, consequently, this point was not properly preserved under the general rule stated in *Humphrey, supra.*[4]

■ The defendant claims that the trial court erred in not *sua sponte* instructing the jury that they could consider the defendant's state of intoxication at the time of the homicide on the issue of whether he had the mental capacity to form the requisite intent for first degree murder. The defendant cites no authority for this proposition. Moreover, a review of the record demonstrates that this is not a case where the evidence of intoxication was such that the defendant was entitled to the benefit of Syllabus Point 2 of *State v. Keeton,* 166 W.Va. 77, 272 S.E.2d 817 (1980):

> "Voluntary drunkenness is generally never an excuse for a crime, but where a defendant is charged with murder, and it appears that the defendant was too drunk to be capable of deliberating and premeditating, in that instance intoxication may reduce murder in the first degree to murder in the second degree, as long as the specific intent did not antedate the intoxication."

■ The record does not disclose how much the defendant had been drinking. It does reveal, however, that the defendant and three other men were in an isolated area and that one of the men, a Mr. Eugene McMillion, was questioning the victim

concerning what he knew about the disappearance of Mr. McMillion's sister. When the victim indicated the sister had been killed and where her body had been buried, the defendant jerked a shotgun from the hands of one of the other men. He then threatened to blow the victim's brains out on the count of three if he did not quit lying and tell the truth. The defendant then counted to three and pulled the trigger. There was also testimony that the defendant was completely coherent shortly after the shooting and that he loaded the shotgun just before shooting the victim. Consequently, we find no merit in this assignment of error.

Finally, the defendant contends he was denied his right to effective assistance of counsel at trial. The alleged errors committed by trial counsel involve two of the errors asserted in this appeal to which specific objections were not made at trial, i.e., (1) the failure to object to the introduction of shotgun pellets taken from the victim's body; and (2) the failure to request an instruction on intoxication preventing the accused from forming the intent to commit a deliberate and premeditated murder.

Additional grounds for the claim of ineffective counsel were the failure to object to the prosecutor's statement during closing argument—"Don't make him [the defendant] somebody else's neighbor in the future if you don't want him for your own neighbor," and the failure to object to the admissibility of the defendant's initial statement to the investigating police officers on the basis that he was not promptly presented to a magistrate.

As the State points out in its brief, the defendant previously raised this claim of

---

4. We do not believe that if an objection had been made, any error would have been committed in admitting the evidence. Dr. Sopher testified that he obtained the evidence from a locked drawer in Dr. Kshirsagar's locked office. The only link missing in the chain of custody was Dr. Kshirsagar's testimony that he put the evidence in the drawer and locked it. Our rule as to the chain of custody of evidence is stated in *State v. Davis,* 164 W.Va. 783, 786–87, 266 S.E.2d 909, 911–12 (1980):

> "To allow introduction of physical evidence into a criminal trial, it is not necessary that every moment from the time evidence comes

into the possession of a law enforcement agency until it is introduced at trial be accounted for by every person who could conceivably come in contact with the evidence during that period, nor is it necessary that every possibility of tampering be eliminated; it is only necessary that the trial judge, in his discretion, be satisfied that the evidence presented is genuine and, in reasonable probability, has not been tampered with. *Munnerlyn v. State,* [264 Ark. 928], 576 S.W.2d 714 (1979)." (Footnotes omitted).

See also *State v. Young,* 173 W.Va. 1, 311 S.E.2d 118 (1983).

ineffective assistance of counsel and had it resolved against him. The defendant was convicted of first degree murder in July, 1981. The defendant thereafter filed a petition for a writ of habeas corpus *ad subjiciendum* with this Court alleging, *inter alia,* that he had been denied his right of appeal and effective assistance of counsel. We granted the writ and made it returnable to the circuit court below in April, 1982.

The circuit court then appointed new counsel to represent the defendant in the habeas corpus proceeding and after conducting an evidentiary hearing concluded that the defendant had failed to prove he had received ineffective assistance of counsel. Specifically, the trial court found that the defendant's trial counsel properly represented the defendant by interviewing the available witnesses, by preparing for trial under difficult circumstances, by protecting his procedural rights and zealously representing him at trial, and by making appropriate motions and tactical decisions.

The trial court's May, 1982 final order denying habeas corpus relief was not appealed and the time for taking an appeal has long since expired. Under Syllabus Point 2, in part, of *Losh v. McKenzie,* 166 W.Va. 762, 277 S.E.2d 606 (1981), we are foreclosed from addressing the merits of the defendant's ineffective assistance of counsel claim:

> "A judgment denying relief in post-conviction habeas corpus is *res judicata* on questions of fact or law which have been fully and finally litigated and decided...." [5]

For the foregoing reasons, the judgment of the Circuit Court of Fayette County is affirmed.

Affirmed.

---

5. We would note, however, that defense counsel's failure to object to the admission of the defendant's initial statement to police authorities based on prompt presentment grounds is not evidence of ineffective assistance of counsel. The defendant's initial statement was made in October, 1980. This was before our decision in *State v. Persinger,* 169 W.Va. 121, 286 S.E.2d 261 (1982), which created an exclusionary rule for violations of the prompt presentment statute. W.Va.Code, 62-1-5. The *Persinger* rule, however, does not apply retroactively. *State v. Hickman,* 175 W.Va. 709, 338 S.E.2d 188 (1985).